# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

|  |  |  |
|---|---|---|
| In re: **Louisiana Public Service Commission,** | ) | **No. 22-60458** |
| **Petitioner.** | ) ) ) ) ) | |

## RESPONSE OF FEDERAL ENERGY REGULATORY COMMISSION IN OPPOSITION TO PETITION FOR WRIT OF MANDAMUS

Pursuant to Federal Rule of Appellate Procedure 21, Circuit Rule 21, and this Court's September 15, 2022 Order, the Federal Energy Regulatory Commission (Commission or FERC) submits its response in opposition to the petition for writ of mandamus (Petition) filed by the Louisiana Public Service Commission (Louisiana). Louisiana asks the Court to issue an extraordinary writ of mandamus, requiring the Commission to prioritize issuing orders in three pending agency proceedings.

But those proceedings – concerning the rates that Intervenor System Energy Resources, Inc. (System Energy) charges customers for power from the Grand Gulf nuclear plant – are just some of the many ongoing and interrelated agency proceedings concerning the Entergy System and the Grand Gulf nuclear plant. And these Grand Gulf proceedings are only a portion of the pending agency proceedings concerning System Energy's parent – Entergy Corp. (Entergy) – and

its subsidiaries.  Over the years, the Commission has issued dozens of orders in these proceedings resulting in numerous decided opinions (many captioned *Louisiana Pub. Serv. Comm'n v. FERC*) of this Court and the D.C. Circuit.  The two courts of appeals have refrained from interceding prior to final agency action, most notably by denying similar requests for extraordinary mandamus relief.  *See In re: La. Pub. Serv. Comm'n*, No. 14-30073, Order Denying Petition for Writ of Mandamus (5th Cir. Mar. 12, 2014); *In re: La. Pub. Serv. Comm'n*, No. 13-1307, Order Denying Petition for Writ of Mandamus (D.C. Cir. Jan. 31, 2014).

The Court should again deny such extraordinary relief, and allow the Commission to continue to manage its review of the many complicated issues presented.  There is no extraordinary – or even particularly unusual – delay that is incompatible with the Commission's exercise of its responsibilities under the Federal Power Act or that otherwise warrants immediate judicial correction.  Contrary to Louisiana's suggestion (Petition at 18-19), a proposed settlement among System Energy and some of the parties will have a direct effect on the agency proceedings at issue here.  Similarly, a recent decision of the D.C. Circuit vacating and remanding the Commission's methodology for establishing a return on equity in the Midcontinent Independent System Operator region directly impacts the Commission's consideration of one of the agency proceedings at issue here.

The Commission, at all times, has been attentive and responsible in addressing the many complex issues raised in these and other Entergy System proceedings. The Commission intends to act on the pending settlement by November 17 of this year and intends to issue additional orders in the proceedings highlighted in Louisiana's Petition as soon as practicable. Under these circumstances, Louisiana's Petition, which seeks to supplant the agency's choice of priorities with its own, should be denied.

## BACKGROUND

The instant case stands against a backdrop of several decades of agency proceedings and litigation concerning the Entergy System. *See*, *e.g.*, *La. Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 4 (D.C. Cir. 2021) (Entergy's relationship with its operating companies and with its state retail regulators "has been a feature of many cases before this Court."); *La. Pub. Serv. Comm'n v. FERC*, 771 F.3d 903 (5th Cir. 2014).

Entergy is a multistate holding company that owns companies (Entergy Operating Companies) that sell electricity and transmission service in Arkansas, Louisiana, Mississippi, and Texas. The Entergy Operating Companies each serve a specific geographic region that corresponds to the local retail regulator.[1] The

---

[1] The Entergy Operating Companies include Entergy Arkansas, LLC, Entergy Louisiana, LLC, Entergy Mississippi, LLC, Entergy New Orleans, LLC, and Entergy Texas, LLC. Entergy Texas, LLC is not involved in the agency

Entergy Operating Companies' wholesale sales of electric energy are regulated by the Commission, and their retail sales of electric energy are regulated by Louisiana, the Arkansas Public Service Commission (Arkansas), the Mississippi Public Service Commission (Mississippi), and Intervenor Council of the City of New Orleans (New Orleans), collectively referred to as "Retail Regulators."

The three Commission proceedings at issue in Louisiana's mandamus petition concern the Grand Gulf nuclear power plant, a 1,409 megawatt nuclear plant in Port Gibson, Mississippi that began operating in 1985. *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 171 FERC ¶ 63,003, FERC Docket EL18-152, Initial Decision PP 13-14 (Apr. 6, 2020) ("Sale-Leaseback Initial Decision"). In 1974, the Entergy Operating Companies entered into an agreement to be responsible for Grand Gulf's costs. *See id.* P 19. System Energy is a wholly-owned subsidiary of Entergy, as a vehicle to finance Grand Gulf, and sells energy and capacity from the Grand Gulf nuclear plant. *Id.* P 11. System Energy has a 90% ownership and leasehold interest in Grand Gulf (the remaining 10% is held by a Mississippi cooperative). *Id.* P 13. The Unit Power Sales Agreement is a cost-based, Commission-jurisdictional formula rate for sales of energy and capacity

---

proceedings at issue here as it does not purchase power from the Grand Gulf nuclear power plant. As a result, references to the "Entergy Companies" are to the other four Entergy Operating Companies.

from System Energy to the Entergy Operating Companies. *Id.* P 14. The Commission originally approved the Unit Power Sales Agreement's formula rate in Opinion No. 234. *See Middle South Energy, Inc.*, Opinion No. 234, 31 FERC ¶ 61,305, *order on reh'g and clarification*, Opinion No. 234-A, 32 FERC ¶ 61,425 (1985); *vacated in part and remanded sub nom. Miss. Indus. v. FERC*, 822 F.2d 1104 (D.C. Cir. 1987), *aff'd after remand sub nom. City of New Orleans v. FERC*, 875 F.2d 903 (D.C. Cir. 1989).

At present, there are numerous pending agency proceedings concerning the Entergy System, including at least 13 addressing issues related to the Unit Power Sales Agreement and Grand Gulf. Louisiana seeks an extraordinary writ of mandamus to compel the Commission to prioritize and act in just a subset of those proceedings. But in so doing, it fails to tell the whole story regarding the Commission's resolution of Entergy proceedings and the impact of two recent developments – a proposed partial settlement and a D.C. Circuit decision.

### The Return on Equity Proceedings (FERC Dockets EL17-41, EL18-142, and EL18-204)

In April 2018, Louisiana filed a Federal Power Act section 206 (16 U.S.C. § 824e) complaint (one of the complaints at issue here), seeking (1) to reduce System Energy's return on equity in the Unit Power Sales Agreement, (2) to cap System Energy's equity ratio for that Agreement, and (3) to reduce System Energy's depreciation rates reflected in that Agreement. *See Ark. Pub. Serv.*

*Comm'n v. Sys. Entergy Res., Inc.*, 174 FERC ¶ 63,024, FERC Dockets EL17-41, EL18-142, EL18-204, Initial Decision PP 21-22 (Mar. 24, 2021) ("Return on Equity Initial Decision").  In August 2018, the Commission denied Louisiana's complaint with regard to capital structure, dismissed the portion concerning depreciation rates, and set the return on equity portion of the Complaint for a hearing before an administrative law judge.  *See id.*; *see La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 164 FERC ¶ 61,134, P 1 (2018).  In August 2018, at Louisiana's request, an administrative law judge consolidated Louisiana's remaining claims with a pending proceeding – an earlier section 206 complaint filed by Arkansas and Mississippi contending that System Energy's return on equity for Grand Gulf was unjust and  unreasonable.  Return on Equity Initial Decision, 174 FERC ¶ 63,024, PP 23-24.

In September 2018, Louisiana filed another complaint asking the Commission to adjust System Energy's capital structure and adopt a different equity ratio for System Energy in the Unit Power Sales Agreement.  *Id.* PP 32-33. In January 2019, the Commission set that complaint for a hearing and settlement judge procedures, and on June 20, 2019, an administrative law judge consolidated that complaint with the Return on Equity Proceeding, setting them for a hearing in 2020.  *Id.* P 34.

While these complaints were pending, the Commission was revising its methodology for calculating return on equity in light of an April 2017 D.C. Circuit decision finding the Commission's methodology was unjust and unreasonable. *See Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017) (vacating and remanding Opinion No. 531, 147 FERC ¶ 61,234 (2014), *order on paper hearing*, Opinion No. 531-A, 149 FERC ¶ 61,032 (2014)*, order on rehearing*, Opinion No. 531-B, 150 FERC ¶ 61,165 (2015)). On remand from the D.C. Circuit, the Commission adopted a new method for determining base return on equity in a series of orders issued between November 2019 and November 2020.[2] *See Association of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569, 169 FERC ¶ 61,129 (2019), *order on reh'g*, Opinion No. 569-A, 171 FERC ¶ 61,154 (2020), *order on reh'g*, Opinion No. 569-B, 173 FERC ¶ 61,159 (2020).

As a result of this reconsideration, the Commission's Chief Administrative Law Judge placed the Return on Equity Proceedings at issue here in abeyance. *See Ark. Pub. Serv. Comm'n, et al. v. Sys. Energy Res., Inc.*, Dockets EL17-41, *et al*., Order of Chief Judge Holding Procedural Schedule in Abeyance (Oct. 17, 2018). However, the Commission provided guidance in November 2018 that those proceedings, along with all other proceedings involving base return on equity

---

[2] These proceedings are summarized in a chart by the D.C. Circuit. *See MISO Transmission Owners v. FERC*, 45 F.4th 248, 257 (D.C. Cir. 2022).

issues that had been set for a hearing, should continue.  *See Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 165 FERC ¶ 61,119, FERC Dockets EL17-41, et al., Order Providing Guidance (2018).

In compliance with this guidance, the parties submitted testimony and rebuttal testimony to the administrative law judge, and in December 2019, System Energy moved to amend the procedural schedule so the parties could submit briefs addressing the impact of Opinion No. 569.  Additional briefing followed, along with submission of additional testimony, further procedural challenges between the parties (including a request by Louisiana to certify questions to the Commission), and settlement judge procedures.  *See* Return on Equity Initial Decision, 174 FERC ¶ 63,024, PP 25-56.

On September 29, 2020, the administrative law judge conducted a hearing, and issued the Initial Decision on March 24, 2021.  Return on Equity Initial Decision, 174 FERC ¶ 63,024, PP 1, 57-63.  System Energy, Louisiana (and the other retail regulators), and Commission trial staff filed briefs on exceptions to the initial decision along with responses and replies.  That briefing was completed in May 2021.  In June 2022, the Mississippi Settlement was filed in this proceeding. As explained below, the briefing on that settlement was completed in August 2022.

The Commission must consider the Initial Decision in light of the Mississippi Settlement and an August 9, 2022 D.C. Circuit decision which vacated

Opinions Nos. 569, 569-A, and 569-B. *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022); *see infra* pp. 11-16.

### *The Sale-Leaseback Proceeding (FERC Docket EL18-152)*

System Energy originally entered into a sale and leaseback agreement in 1988 in which it sold a portion of its interest in Grand Gulf's output to third parties and leased back that output along with retaining possession and responsibility for all aspects of Grand Gulf (operations, maintenance, repairs, upgrades, insurance, taxes, and other costs and liabilities). Sale-Leaseback Initial Decision, 171 FERC ¶ 63,003, PP 20, 29. A portion of the proceeds of the sale-leaseback were credited against customer rates under the Unit Power Sales Agreement. *Id.* P 24. The original sale-leaseback agreement was for a term from January 1989 to July 2015. *Id.* PP 26-27. Before expiration of the original sale-leaseback agreement, System Energy entered into a new leasing arrangement with a 21-year term to begin in July 2015. *Id.* PP 37-38.

In May 2018, Louisiana filed a Federal Power Act section 206 complaint. That complaint alleged that System Energy violated the filed rate doctrine and Commission ratemaking and accounting requirements by billing the cost of Grand Gulf's lease renewal to Louisiana under the Unit Power Sales Agreement's formula rate. *Id.* P 75.

In September 2018, the Commission established hearing and settlement judge procedures before an administrative law judge. The administrative law judge held a two-week hearing in November 2019, and issued an initial decision in April 2020. *Id.* PP 76-82.

In June 2020, System Energy, Louisiana (and the other retail regulators), and Commission trial staff filed briefs on exceptions to the initial decision along with responses and replies. That briefing was completed in November 2020. In December 2020, System Energy filed a motion to lodge documents from proceedings with the Internal Revenue Service. Briefing on that motion was completed in late-January 2021. In June 2022, the Mississippi Settlement was filed in the Sale-Leaseback Proceeding. As explained below, the briefing on that settlement was completed in August 2022.

### *Grand Gulf Prudence Complaint (FERC Docket EL21-56)*

On March 2, 2021, Louisiana and certain other Entergy Retail Regulators filed a Federal Power Act section 206 complaint. That complaint alleged that System Energy violated the obligation of prudent utility management in operating Grand Gulf, resulting in large overcharges to Entergy Operating Company customers. *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc*, FERC Docket EL21-56, Complaint at 1-10 (Mar. 2, 2021).

In April 2021, System Energy filed a motion to dismiss and answer to the complaint, arguing that the complaint was improperly challenging a 2012 expansion to Grand Gulf that Louisiana had not complained about in the intervening 9 years, and that Louisiana failed to meet its burden to show "serious doubt" about the prudence of Grand Gulf's operations. *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL21-56, Respondents' Motion to Dismiss the Complaint and Answer to the Complaint at 1-7 (filed Apr. 16, 2021). System Energy also filed a motion to strike portions of the complaint that same day. Numerous interested parties intervened and briefing on these motions continued through July 2021. In June 2022, the Mississippi Settlement was filed in the Grand Gulf Prudence Complaint proceeding. As explained below, the briefing on that settlement finished in August 2022.

### *The Mississippi Settlement*

On June 23, 2022, System Energy filed a partial settlement between itself and Mississippi in seven different agency proceedings (totaling 13 separate FERC dockets), including all three of the proceedings at issue here. *See, e.g.*, *Ark. Pub. Serv. Comm'n v. Sys. Energy Resources, Inc.*, FERC Dockets EL17-41, *et al.*, Report of System Energy Resources, Inc. of Filing of Partial Settlement Agreement and Offer of Settlement (June 23, 2022). After multiple requests for extensions of the deadline to file initial and reply comments to the settlement, including one by

Louisiana, the comment period on the settlement concluded on August 16, 2022. On August 11, 2022, System Energy filed an unopposed motion for procedural relief which asked the Commission to clarify that it will review the Mississippi Settlement for all substantive purposes and waive otherwise applicable certification requirements so that proceedings pending before an administrative law judge can continue while the Commission considers the Mississippi Settlement. *See Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 180 FERC ¶ 61,195, Order on Procedural Motions PP 1, 11-13 (Sept. 23, 2022). On September 23, 2022, the Commission granted System Energy's procedural motion. *Id.* PP 1, 18-19.

Numerous entities, including Louisiana, have filed initial comments and reply comments concerning the Mississippi Settlement. *See e.g.*, *Ark. Pub. Serv. Comm'n v. Sys. Energy Resources, Inc.*, FERC Dockets EL17-41, *et al.*, Comments of the Louisiana Pub. Serv. Comm'n Expressing Non-Opposition to Settlement Agreement Between Mississippi Pub. Serv. Comm'n and Entergy Companies Assuming Severance of Tariffs (filed Aug. 1, 2022) ("Louisiana Settlement Comments"); *Ark. Pub. Serv. Comm'n v. Sys. Energy Resources, Inc.*, FERC Dockets EL17-41, *et al.*, Supplemental and Reply Comments of the Louisiana Pub. Serv. Comm'n Expressing Non-Opposition to Settlement Agreement Between Mississippi Pub. Serv. Comm'n and Entergy Companies (filed Aug. 10, 2022) ("Louisiana Settlement Reply"). Louisiana initially placed conditions on its

consent – specifically that the Commission sever the Unit Power Sales Agreement's formula rate cost-of-service computation for Mississippi customers from that applicable to other Entergy Operating Companies' customers. *See* Louisiana Settlement Comments at 4-10. In its reply comments, Louisiana withdrew this condition to its consent to the settlement. *See* Louisiana Settlement Reply at 2 ("the Louisiana Commission hereby withdraws the request for the severance condition if the condition is opposed by Entergy, [Mississippi], or another party").

The Commission has yet to act on the Mississippi Settlement; it intends to issue a ruling by November 17, 2022. Commission action on the settlement requires careful consideration as it addresses complex issues regarding charges and refunds under the Unit Power Sales Agreement. That the Mississippi Settlement is uncontested does not relieve the Commission of its duty to approve it only if it is "fair and reasonable and in the public interest." 18 C.F.R. § 385.602(g)(3). In addition, the settlement will produce partial resolution of several complicated Commission proceedings that are in varying procedural postures, with some pending before the Commission, others pending before an administrative law judge, and still others being held in abeyance. *See, e.g.*, FERC Dockets EL17-41, *et al.*, EL18-152, ER18-1182, EL21-56 (pending before the Commission); FERC Docket EL20-72 (pending before administrative law judge); FERC Dockets

ER21-117, ER21-129, EL21-24, ER21-748, EL21-46 (held in abeyance pending

the issuance of Commission opinions on the Sale-Leaseback Initial Decision and

the Initial Decision in FERC Docket ER18-1182); *see generally Ark. Pub. Serv.*

*Comm'n v. Sys. Energy Res., Inc.*, 180 FERC ¶ 61,195, Order on Procedural

Motions PP 2-15.

The Commission's decision on the Mississippi Settlement will have a direct

impact on the proceedings at issue here along with numerous other pending

proceedings.  The Commission must determine whether the partial settlement is

"fair and reasonable and in the public interest," while also considering whether and

how the terms of the partial settlement will impact the Commission's

determinations in these and other similar System Energy dockets.  For example,

the Mississippi Settlement applies a higher return on equity and higher equity ratio

for Mississippi than the administrative law judge found to be just and reasonable in

the Return on Equity Initial Decision.  Indeed, Louisiana recognized these "spill-

over effects" in its initial comments on the Mississippi Settlement.  Louisiana

argued that "the Mississippi Settlement will produce adverse consequences to

Entergy Arkansas, Entergy Louisiana and Entergy New Orleans if the Entergy

Mississippi tariff is not severed."  Louisiana Settlement Comments at 8.  Louisiana

alleged that the Mississippi Settlement would "introduce numerous inconsistent

terms into the tariff if the Entergy Mississippi [Unit Power Sales Agreement] is not

severed from that applicable to the other companies." *Id.* at 6. Louisiana argued that "[a]bsent a severance of the Entergy Mississippi tariff, Entergy will need to change the pricing for a portion of the sales to Entergy Arkansas, so that a single sale is made under different terms." *Id.* Louisiana further suggested that the Commission's decision in the Return on Equity Proceeding "will undoubtedly produce a different return on equity and equity ratio for the other companies than that provided in the Mississippi Settlement." *Id.*; *see also id.* at 3 (describing "spill-over" effects of Mississippi Settlement). In its reply comments, Louisiana "clarifies that it does not oppose the Mississippi Settlement, even in the absence of a severance of the tariffs." Louisiana Reply Comments at 5. Nonetheless, the Commission will consider these, and other entities' comments, as part of its analysis of the Mississippi Settlement.

### *MISO Transmission Owners v. FERC (D.C. Cir.)*

On August 9, 2022, the D.C. Circuit issued an opinion in *MISO Transmission Owners v. FERC*, which vacated three orders (Opinions Nos. 569, 569-A, and 569-B) in which the Commission had established the methodology for determining the return on equity in the Midcontinent region (which includes the Entergy System). 45 F.4th 248 (D.C. Cir. 2022). The Initial Decision in the Return on Equity Proceeding applied the return on equity methodology that was vacated by the D.C. Circuit in *MISO Transmission Owners. See, e.g.*, Return on

Equity Initial Decision, 174 FERC ¶ 63,024, PP 72-99, 325-450 (discussing risk premium). The Commission's revision to its return on equity methodology on remand from the D.C. Circuit will inform the Return on Equity Proceeding.

### *Other Entergy System Matters*

As noted above, the Mississippi Settlement was filed not only in the three agency proceedings at issue here, but in an additional four agency proceedings which also relate to the Entergy System. Those proceedings include various proposals by System Energy to revise the Unit Power Sales Agreement, such as proposed revisions to System Energy's rate base and provisions governing the treatment of accumulated deferred income tax balances, as well as multiple challenges to the billing and prudence of costs of the Grand Gulf facility under the Unit Power Sales Agreement.

One such proceeding, *Sys. Energy Res., Inc.*, FERC Docket ER18-1182, is of particular relevance to the Sale-Leaseback Complaint proceeding. In that proceeding, initiated in March 2018, System Energy filed with the Commission proposed revisions to the Unit Power Sales Agreement concerning System Energy's accounting for $147.3 million related to tax deductions for decommissioning Grand Gulf. *See Sys. Energy Res., Inc.*, 172 FERC ¶ 63,003, FERC Docket ER18-1182, Initial Decision PP 3-14 (2020). An administrative law judge issued an initial decision in July 2020. *Id.* PP 1-2. Briefs on and opposing

exception were filed September 2020 and December 2020.  As in the other

proceedings described herein, the Mississippi Settlement was filed in FERC

Docket ER18-1182.

## ARGUMENT

## The Extraordinary Remedy of Mandamus Is Not
## Warranted In These Circumstances

Mandamus is an extraordinary remedy that is available only in extraordinary

circumstances where the petitioner has a clear right to relief.  Louisiana cannot

meet this high standard here.  The Commission has given careful consideration to

the many Entergy System matters – both Federal Power Act section 205 (rate/tariff

filing) and section 206 (complaint) proceedings – that have come before it and has

acted promptly to move proceedings along.  Louisiana might prefer the

Commission address these matters in a different sequence, but the Commission has

broad discretion to manage how it addresses the many complex proceedings that

come before it.  Furthermore, the Federal Power Act does not impose a deadline on

the Commission's consideration of section 206 complaints, nor does it require they

be addressed in a specified order or time period.

## 1.    Mandamus Is An Extraordinary Remedy

"[M]andamus is drastic; it is available only in extraordinary situations," and

is "hardly ever granted."  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en

banc) (quotation marks omitted); *see also Leonard v. Martin*, 38 F.4th 481, 488-89

(5th Cir. 2022) ("A writ of mandamus is a drastic and extraordinary remedy reserved for really extraordinary cases.") (internal quotation marks omitted); *Yablonski v. United Mine Workers*, 454 F.2d 1036, 1038 (D.C. Cir. 1971) (writs of mandamus "are among the most potent weapons in the judicial arsenal" and, "as extraordinary remedies, they are reserved for really extraordinary causes") (internal quotation marks and citations omitted).

A petitioner's burden is high: "The party seeking mandamus has the burden of showing that 'its right to the issuance of the writ is clear and indisputable.'" *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997) (citation omitted). Specifically, "[m]andamus may only issue when (1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3) no other adequate remedy exists." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011) (citations omitted); *see also Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (similar); *McClain v. Panama Canal Comm'n*, 834 F.2d 452, 455 (5th Cir. 1987) (writ "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty"). Even then, "whether mandamus relief should issue is discretionary." *In re Cheney*, 406 F.3d at 729.

"The central question in evaluating 'a claim of unreasonable delay'" – on which Louisiana bases its request for extraordinary relief – "is 'whether the

agency's delay is so egregious as to warrant mandamus.'" *In re Core Communications, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) (*TRAC*)). "The first and most important factor is that the time agencies take to make decisions must be governed by a 'rule of reason.'" *In re Core Communications*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "[T]he primary purpose of the writ in circumstances like these is to ensure that an agency does not thwart our jurisdiction by withholding a reviewable decision." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (citing *TRAC*, 750 F.2d at 76).

On the rare occasions that Courts have granted mandamus to compel delayed agency action, the delay typically is many years. *See, e.g.*, *In re Pub. Employees for Envtl. Responsibility*, 957 F.3d 267, 273-74 (D.C. Cir. 2020) (granting mandamus to compel agency to comply with statutory mandate after 19-year delay); *In re Am. Rivers and Idaho Rivers United*, 372 F.3d at 419 (six years); *In re Bluewater Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000) (nine years). In fact, the D.C. Circuit "has not hesitated to deny the writ even when an agency has missed a statutory deadline by far more than . . . two years." *In re Aiken Cnty.*, 725 F.3d 255, 268 (D.C. Cir. 2013) (Garland, C.J., dissenting) (citing *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 546, 551 (D.C. Cir. 1999)); *see*

*also, e.g.*, *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100-01 (D.C. Cir. 2003) (vacating and remanding the district court's determination that a 5-year delay was unreasonable); *In re Monroe Communications Corp.*, 840 F.2d 942, 945-47 (D.C. Cir. 1988) (declining to issue the writ despite the agency's 3-year delay since the ALJ's initial decision, and 5-year delay since the start of agency proceedings); *Oil, Chem. & Atomic Workers Int'l Union v. Zegeer*, 768 F.2d 1480, 1487-88 (D.C. Cir. 1985) (declining to issue the writ after a 5-year delay). Louisiana does not cite any decision suggesting that this Court (or any other court for that matter) is any less forgiving in assessing delay for purposes of mandamus.

## 2. The Commission's Management Of These Complex, Overlapping Proceedings Does Not Rise To The Level Of Extraordinary Delay

Louisiana cannot meet its high burden to show extreme foot-dragging. Here, any delay is measured in months, not years, and includes time during which the Mississippi Settlement has been pending for agency review. As explained above, the Commission has devoted significant attention and resources to Entergy matters, including those involving Grand Gulf, and in so doing has given those matters the attention and consideration they require while acting as promptly and responsibly as practicable. In bringing this extraordinary action, Louisiana has left out the broader picture of the myriad proceedings stemming from the Entergy System, and the impacts of the Mississippi Settlement and *MISO Transmission Owners*

decision. For example, during the pendency of the agency proceedings at issue here, the Commission has issued numerous merits orders, including on Federal Power Act section 206 complaints filed by Louisiana concerning accounting for Entergy's charges under other agreements and the allocation of Entergy System costs to the Entergy Operating Companies.[3] And the Commission has acted on additional section 206 complaint filings by Louisiana and others concerning the Entergy System and section 205 rate filings by System Energy.[4]

---

[3] *See, e.g.*, *La. Pub. Serv. Comm'n v. Entergy Corp.*, 171 FERC ¶ 61,044 (Apr. 16, 2020) (order granting in part and denying in part Louisiana's rehearing petition concerning accounting for Entergy deferred income taxes in section 206 proceeding); *id.*, 173 FERC ¶ 61,152 (Nov. 19, 2020) (order addressing rehearing petitions and directing further compliance); *id.*, 175 FERC ¶ 61,042 (Apr. 15, 2021) (order on compliance in section 206 proceeding); *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 167 FERC ¶ 61,240 (June 20, 2019) (order addressing rehearing petitions); *La. Pub. Serv. Comm'n v. Entergy Servs., Inc.*, 169 FERC ¶ 61,127 (Nov. 21, 2019) (order on paper hearing concerning remand from D.C. Circuit); *La. Pub. Serv. Comm'n v. Entergy Services, Inc.*, 172 FERC ¶ 61,146 (Aug. 18, 2020) (order addressing rehearing petition).

[4] *See, e.g.*, *La. Pub. Serv. Comm'n v. Entergy Corp.*, 180 FERC ¶ 61,085 (Aug. 9, 2022) (order on complaint and establishing hearing and settlement judge procedures); *Sys. Energy Res., Inc.*, 177 FERC ¶ 61,189 (Dec. 16, 2021) (order denying Louisiana petition to appoint discovery master or settlement judge and dismissing Louisiana motion to compel); *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 175 FERC ¶ 61,113 (May 13, 2021) (order on complaint, establishing hearing procedures and holding in abeyance); *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 176 FERC ¶ 61,095 (Aug. 13, 2021) (order addressing rehearing petitions); *Sys. Energy Res., Inc.*, 178 FERC ¶ 61,184 (Mar. 15, 2022) (order accepting and suspending section 205 filing and establishing hearing and settlement procedures).

In addition, the Commission is presently addressing the complexities of the Mississippi Settlement, including whether to approve that settlement and, if so, how to remove Mississippi from the ongoing proceedings. The Commission's decisions, grounded in its substantive expertise and administrative experience, to hold some related matters in abeyance to avoid repeated litigation of recurring and overlapping issues reflect the Commission's considered judgment as to the proper ordering of those matters.

Of course, resolution of complex disputes takes time. An actively litigated agency proceeding with a trial-type hearing before an administrative law judge, briefing on and opposing exceptions, rehearing before the agency, and the ordinary briefing/argument/opinion process in the federal appeals courts may take a number of years from start to finish (and longer if a petitioner were to prevail on judicial review, obtaining a remand to the agency that could include repetition of any or all of those stages). And while Louisiana points to the Commission's action on System Energy filings under Federal Power Act section 205, it makes no effort to show those proceedings were as complex or required the same attention as the proceedings at issue here.

Even so, Louisiana fails to show that the Commission is treating its section 206 complaint proceedings dissimilarly from section 205 rate filings concerning the Entergy System. Louisiana points to System Energy's section 205 filing in

FERC Docket ER22-24, where the Commission set the matter for a hearing 165 days after the initial filing. Petition at 16 (System Energy filing Oct. 1, 2021, order setting matter for a hearing March 15, 2022). But Louisiana neglects to note that the Commission set for hearing in less time three of the complaints at issue here (119 days from filing to setting a hearing for one of the Return on Equity Complaints (FERC Docket EL18-142); 115 days from filing to setting a hearing for another of the Return on Equity Complaints (FERC Docket EL18-204); and 125 days from filing to setting a hearing for the Sale-Leaseback Complaint (FERC Docket EL18-152)).[5] Similarly, the Commission takes adequate time to address initial ALJ decisions in complex System Energy section 205 rate filing cases. *See, e.g.*, *Sys. Energy Res., Inc.*, 172 FERC ¶ 63,003, FERC Docket ER18-2283, Initial Decision (July 9, 2020) (currently pending before the Commission on exceptions

---

[5] *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 164 FERC ¶ 61,134, FERC Docket EL18-142, Order on Complaint, Establishing Hearing and Settlement Judge Procedures, and Establishing Effective Date (Aug. 24, 2018); *Id.*, FERC Docket EL18-142, Complaint of the Louisiana Pub. Serv. Comm'n (Apr. 27, 2018); *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 166 FERC ¶ 61,022, FERC Docket EL18-204, Order on Complaint, Establishing Hearing and Settlement Judge Procedures, and Establishing Effective Date (Jan. 17, 2019); *id.* Amended Complaint of the La. Pub. Serv. Comm'n, FERC Docket EL18-142 (Sept. 24, 2018); *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 164 FERC ¶ 61,189, FERC Docket EL18-152, Order on Complaint, Establishing Hearing and Settlement Judge Procedures, and Establishing Effective Date (Sept. 20, 2018); *id.*, Complaint of Louisiana Pub. Serv. Comm'n (May 18, 2018).

to the ALJ initial decision); *Entergy Arkansas, Inc.*, Opinion No. 575, 175 FERC

¶ 61,136 (May 20, 2021) (agency decision on ALJ initial decision).

Moreover, it is within the Commission's purview to determine how best to

allocate its resources for the most efficient resolution of matters before it. "An

agency enjoys broad discretion in determining how best to handle related, yet

discrete, issues in terms of procedures and priorities . . . ." *Mobil Oil Exploration*

*& Producing Se., Inc. v. United Distrib. Cos.*, 498 U.S. 211, 230 (1991) (internal

citation omitted); *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council,*

*Inc.*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely

compelling circumstances the administrative agencies should be free to fashion

their own rules of procedure and to pursue methods of inquiry capable of

permitting them to discharge their multitudinous duties.") (internal quotation

marks and citations omitted); *see also Louisiana Pub. Serv. Comm'n*, 20 F.4th at 7

("The Louisiana Commission's argument that FERC should have remedied the

Grand Gulf Sales in [a particular] proceeding also falls short.") (citing *Mobil Oil*

and *Vt. Yankee*); *New Orleans Pub. Serv., Inc. v. FERC*, 659 F.2d 509, 515 (5th

Cir. 1981) (recognizing the Commission's "authority to tailor administrative

procedures to the needs of a particular case") (citing *Vt. Yankee*); *United Power,*

*Inc. v. FERC*, -- F.4th --, 2022 WL 4281979, at *4 (D.C. Cir. Sept. 16, 2022) ("An

agency has broad discretion to determine when and how to hear and decide the

matters that come before it.") (citing cases); *ZooCats, Inc. v. U.S. Dep't of Agriculture*, 417 Fed. App'x 378, 381 (5th Cir. 2011) (unpublished) ("An ALJ has broad discretion to manage its docket to promote judicial economy, efficiency, and to protect the interests of the parties.").

Courts are appropriately reluctant to interfere with that discretion, even in the ordinary course of appellate review – let alone on an extraordinary petition for mandamus relief. *See Mobil*, 498 U.S. at 230 (appeals court had "clearly overshot the mark" if it required the Commission to resolve a particular issue in a particular proceeding) (internal citations omitted); *FPC v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976) ("At least in the absence of substantial justification for doing otherwise, a reviewing court may not . . . proceed by dictating to the agency the methods, procedures, and time dimension of the needed inquiry . . .."), *cited in Vt. Yankee*, 435 U.S. at 544-45. But that is precisely what Louisiana asks this Court to do – to dictate to the Commission the procedures and timing of its consideration of Louisiana's many complaints. *See Tenn. Valley Mun. Gas Ass'n v. FERC*, 140 F.3d 1085, 1088 (D.C. Cir. 1998) (rejecting argument that the Commission "must have fully resolved" all issues that may be presented in the record in a single adjudication at a particular time). This Court should reject Louisiana's invitation as it did the last time Louisiana made such a request. *See In*

*re: La. Pub. Serv. Comm'n*, No. 14-30073, Order Denying Petition for Writ of

Mandamus (5th Cir. Mar. 12, 2014).

### 3. Louisiana Does Not Have A Clear Right To Relief Under Section 206 Of The Federal Power Act

Louisiana mistakenly claims (Petition at 22-26) that the Federal Power Act

imposes a strict deadline on the Commission's obligation to act on Louisiana's

complaints, or otherwise compels the Court to act now.

Federal Power Act section 206 instructs the Commission to "act as speedily

as possible" when resolving complaints and to give them the "same preference" as

section 205 rate filings. 16 U.S.C. § 824e(b). Louisiana asserts that the "parallel

treatment mandated in the statute, and the legislative history, require that FERC

take preliminary action within 60 days on complaint cases." Petition at 24. Not

so. Louisiana can point to no court ruling or Commission statement embracing its

reading of the statute and this newly-discovered 60-day deadline. Indeed, the D.C.

Circuit has explicitly rejected the contention that section 206 establishes a deadline

for Commission action. *See Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1218

(D.C. Cir. 2009). Moreover, here Louisiana asks for final action on their

complaints, not "preliminary action," whatever that may be.

Federal Power Act section 206 "does not . . . set a deadline for action," but

only requires the Commission to "state the reasons for its delay." *Id*. Congress

chose not to impose a deadline on complaint proceedings, as it could have by, for

example, deeming complaints denied after a certain time period.  *See* 16 U.S.C.

§ 824e(b) (party initiating section 206 complaint proceeding bears the burden of

proof to show that a rate is unjust or unreasonable).  The absence of a deadline

distinguishes section 206 complaints from rate filings under Federal Power Act

section 205, which may go into effect after 60 days if the Commission has not

acted.  *See* 16 U.S.C. § 824d(d); *see also, e.g.*, *Cogentrix Energy Power Mgmt.,*

*LLC v. FERC*, 24 F.4th 677, 683 (D.C. Cir. 2022) ("When a utility seeks to charge

a different rate, the utility must file a new rate schedule with the Commission; no

rate change 'shall be made . . . except after sixty days' notice to the Commission

and to the public.'") (quoting 16 U.S.C. § 825d(d)) (ellipses in original); *id.* at 681

n.4 ("A new rate cannot become operative until sixty days after it is filed with the

Commission.").  While Congress instructed the Commission to give section 206

complaints the same preference as section 205 rate filings, it did not impose an

actual deadline by which the Commission must act, instead requiring only an

estimate of when it expects to issue a decision and why it failed to act within 180

days.  *See* 16 U.S.C. § 824e(d).  The Regulatory Fairness Act amendment to the

Federal Power Act did not revoke or infringe on the Commission's "broad

discretion in determining how best to handle related, yet discrete, issues in terms of

procedures and priorities . . .."  *Mobil Oil*, 498 U.S. at 230.  Congress urged the

Commission to give priority to section 206 complaints, and to act "as speedily as possible," but it did not set a timeline for action as Louisiana claims.

Congress is well aware of how to impose deadlines on the Commission, including by imposing consequences in the event of delay. For example, Federal Power Act section 313(a) provides that, "[u]nless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied." 16 U.S.C. § 825*l*(a). Commission inaction for a set period – 30 days – results in a specific outcome – denial of the application for rehearing by operation of law, which allows a petitioner to seek judicial review in a federal court of appeals. *See* 16 U.S.C. § 825*l*; *Allegheny Def. Project v. FERC*, 964 F.3d 1, 16-17 (D.C. Cir. 2020) (en banc) (interpreting parallel provision of the Natural Gas Act). Similar to Federal Power Act section 205, rate filings under Natural Gas Act section 4 may go into effect 30 days after they are filed if the Commission has not acted. *See* 15 U.S.C. § 717c(d). And the Commission may "suspend the operation . . . and defer the use" of a proposed rate for up to five months, but not longer. *Id.* § 717c(e); *see also Northeast Energy Associates v. FERC*, 158 F.3d 150, 151 (D.C. Cir. 1998). Similarly, Congress amended the Federal Power Act in 2005 to specify that the "Commission shall grant or deny" certain applications for approval of transactions "not later than 180 days after the application is filed," and that if "the Commission does not act within 180 days,

28

such application shall be deemed granted" unless the Commission makes specific findings and issues a tolling order for not more than 180 additional days.  16 U.S.C. § 824b(a)(5); *see also* Energy Policy Act of 2005, Pub. L. 109-58 § 1289 (Aug. 8, 2005); *Allegheny Defense Proj.*, 964 F.3d at 15-16.

In all these instances, Congress provided for a specific result if the Commission did not act within a specified period.  By contrast, Congress did not provide for Federal Power Act section 206 complaints to be deemed denied after 60 days, nor did it provide that a complainant may seek review in a federal court if the Commission did not act by a given date.  All Congress has done is instruct the Commission to give Federal Power Act section 206 complaints the same priority it gives to section 205 rate filings and to act as promptly as possible.  Congress did not micromanage the Commission by instructing it on when and how to rule on specific individual section 206 complaints.  And Louisiana does not attempt to show that the Commission is systematically ignoring section 206 complaints or treating them dissimilar to section 205 rate filings.  As explained above, the Commission has acted diligently in addressing the issues raised in these complex agency proceedings while also addressing numerous other complex proceedings concerning the Entergy System.

Moreover, insofar as Louisiana challenges the Commission's compliance with Federal Power Act section 206 when it provides an estimate for when a

decision is likely to issue after 180 days, *see* Petition 24-25, Louisiana has not

established any injury from what it considers the Commission's deficient

explanations. And "[b]ecause the statute merely requires that FERC explain its

inaction, this is the harm [Louisiana] must show." *Exxon Mobil Corp.*, 571 F.3d at

1218. Here, Louisiana seeks an extraordinary writ compelling Commission action

in three pending dockets, not an explanation for inaction. *See* Petition at 31.

## CONCLUSION

For the reasons stated, this Court should deny the petition for writ of

mandamus.

Respectfully submitted,

Robert H. Solomon
Solicitor

Carol J. Banta
Senior Attorney

s/ *Matthew J. Glover*
Matthew J. Glover
Attorney

Federal Energy Regulatory
   Commission
Washington, DC  20426
Tel.: (202) 502-6180
Email:  matthew.glover@ferc.gov

September 26, 2022

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 21(d), and 32(c)(2), I certify that this response complies with the type-volume limitation of Fed. R. App. P. 21(d) because this brief contains 6,928 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I further certify that this response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this response has been prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

*/s/ Matthew J. Glover*
Matthew J. Glover
Attorney

Federal Energy Regulatory
  Commission
888 First Street, NE
Washington, DC 20426
Telephone: (202) 502-6180
Email: matthew.glover@ferc.gov

September 26, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Fifth Circuit by using the

appellate CM/ECF system on September 26, 2022. Participants in the case will be

served by email through the Court's CM/ECF system.


*/s/ Matthew J. Glover*
Matthew J. Glover
Attorney


Federal Energy Regulatory
  Commission
888 First Street, NE
Washington, DC 20426
Telephone: (202) 502-6180
Email: matthew.glover@ferc.gov

September 26, 2022