# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

*In re: Louisiana Public Service Commission,*

No. 22-60458

*Petitioner*

## RESPONSE OF SYSTEM ENERGY RESOURCES, INC., ENTERGY SERVICES, LLC, ENTERGY OPERATIONS, INC., AND ENTERGY CORPORATION TO PETITION FOR A WRIT OF MANDAMUS

Sanford I. Weisburst
QUINN EMANUEL URQUHART &
  SULLIVAN LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
(212) 849-7170
sandyweisburst@quinnemanuel.com

*Counsel for SERI, Entergy Services,
Entergy Operations, and Entergy
Corporation*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .......................................................................... ii

INTRODUCTION ....................................................................................... 1

STATEMENT .............................................................................................. 5

    A.   The FERC Proceedings Addressed By The Petition ................................. 5

    B.   Comparison FERC Proceedings Initiated By System Energy Or Its Affiliates Under Federal Power Act Section 205 (<u>16 U.S.C. § 824d</u>)................. 7

ARGUMENT ............................................................................................... 8

I.   THE PETITION MISSTATES THE LEGAL STANDARD FOR MANDAMUS ............................................................................................... 8

II.   THE PETITION DOES NOT ESTABLISH IRREPARABLE HARM REGARDING MOST OF EL18-152 AND EL21-56 ......................................... 10

III.   LPSC DOES NOT SHOW THAT FERC'S PROCESSING TIMES ARE EGREGIOUS ............................................................................................... 12

    A.   LPSC Errs In Asserting that FERC Violated Section 206(b)'s "Same Preference" Language .................................................................................. 12

    B.   FERC's Processing Times In The Underlying Proceedings Are Reasonable, And Certainly Not Egregious ....................................................................... 15

CONCLUSION ........................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Depuy Orthopaedics, Inc.*,
870 F.3d 345 (5th Cir. 2017) ........................................................ 10

*Exxon Mobil Corp. v. FERC*,
571 F.3d 1208 (D.C. Cir. 2009) .................................................... 13

*MISO Transmission Owners v. FERC*,
45 F.4th 248 (D.C. Cir. 2022) ..................................................... 6, 16

*Petition of the Louisiana Public Service Commission for a Writ of
Mandamus,* Order, Doc. No. 00512558916 (5th Cir. Mar. 12, 2014) ............ 1, 15

*Pub. Utils. Comm'n of Cal. v. FERC*,
462 F.3d 1027 (9th Cir. 2006) ..................................................... 15

*Telecomm. Research & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ....................................................... 9

## Administrative Decisions

*Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*,
174 FERC ¶ 63,024 (2021) .......................................................... 6

*Ass'n of Businesses Advocating Tariff Equity v. Midcontinent Indep. Sys.
Operator, Inc.*,
Opinion No. 569, 169 FERC ¶ 61,129 (Nov. 2019) ................................ 6

*Entergy Ark., Inc.*,
175 FERC ¶ 61,136 (2021) ......................................................... 8, 14

*Ill. Com. Comm'n v. Commonw. Edison Co.*,
Docket Nos. 86-0511, 87-0123, 1990 WL 10554575 (Ill. Com. Comm'n
Nov. 7, 1990) ...................................................................... 12

*La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*,
164 FERC ¶ 61,189 (2018) .......................................................... 7

*La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*,
171 FERC ¶ 63,003 (2020) .......................................................... 7

*Pub. Serv. Co. of N. H.*,
Docket No. 91-011, 1991 WL 494456 (N.H. P.U.C. Oct. 25, 1991) ............... 12

*Sys. Energy Res., Inc.*,
   172 FERC ¶ 63,003 (2020) ........................................................8, 14

**Statutory Authorities**

16 U.S.C. § 824d .................................................................................. 7

16 U.S.C. § 824e(b) .....................................................................7, 8, 13

16 U.S.C. § 825h .................................................................................. 15

**Additional Authorities**

Letter from Mike Francis to Phillip May (Aug. 8, 2022) ...................... 3

Intervenors System Energy Resources, Inc. ("SERI"), Entergy Corporation, Entergy Services, LLC ("Entergy Services"), and Entergy Operations, Inc. ("Entergy Operations"; together, "System Energy"), respectfully file this Response to the petition for a writ of mandamus of Petitioner Louisiana Public Service Commission ("LPSC").[1]

## INTRODUCTION

In the most instructive precedent, which LPSC fails to mention, this Court denied LPSC's petition for a writ of mandamus where FERC's processing times ranged from one-and-a-half to two-and-a-half years. *See In re: La. Pub. Serv. Comm'n*, No. 14-30073, Petition of the Louisiana Public Service Commission for a Writ of Mandamus, Doc. No. 00512515157, at 2-4 (5th Cir. Jan. 29, 2014); *id.*, Order, Doc. No. 00512558916 (5th Cir. Mar. 12, 2014) (*per curiam*) (summarily denying petition). This Court should similarly deny LPSC's Petition here, where the time FERC has taken to process the underlying proceedings is the same or shorter than in that prior case.

Specifically, in EL21-56, the complaint has been pending before FERC for *nineteen months*[2]; in consolidated EL17-41, EL18-142, and EL18-204, FERC's

---

[1]  FERC has filed its own Response arguing that the Petition should be denied. System Energy agrees with FERC's Response and joins in FERC's arguments.

[2]  LPSC's "unreasonable delay" assertion regarding EL21-56 is hypocritical; LPSC neglects to mention that it waited almost *nine years* (until 2021) to challenge the

administrative law judge ("ALJ") already issued an Initial Decision in March 2021, meaning that FERC's review of that decision has been pending for *nineteen months*; and in EL18-152, FERC's ALJ issued an Initial Decision in April 2020, such that FERC's review of that decision has been pending for approximately *two-and-a-half years*.

There are good reasons why FERC has taken the time it has. In EL21-56, the complaint's allegations go back to approximately 2009 and concern complex investments in and operation of the largest single-unit nuclear plant in the United States; moreover, several months were taken up by briefing on System Energy's motion to dismiss. Similarly, in EL17-41, EL18-142, and EL18-204, briefing on exceptions to the Initial Decision took several months, and there was a need to wait for the D.C. Circuit's August 2022 decision in a related appeal. And in EL18-152, FERC is confronting two issues of first impression, and also taking into account Internal Revenue Service rulings released after the Initial Decision.

Not only do all of these proceedings involve novel and complex issues, but they also recently came together in a partial settlement between System Energy and the Mississippi Public Service Commission ("MPSC"), which was filed on June 23, 2022. LPSC acknowledges (Petition ("Pet.") 19) that this settlement allows others

---

prudence of 2012 investment to increase the capacity of the Grand Gulf Nuclear Station.

such as itself to sign onto the settlement on the same terms. While LPSC is within its rights to refuse to do so, it or others might negotiate for different terms that also would result in a comprehensive settlement. Contrary to LPSC's prediction that such negotiations are "no[t] … likely," (*id.*) it remains System Energy's goal to achieve global settlements similar to the Mississippi settlement with all of the remaining retail regulators involved in the contested FERC cases. To achieve this goal, System Energy intends to pursue continued negotiations with all of those retail regulators. Indeed, even the LPSC itself has signaled its desire to engage in such negotiations, as evidenced by the attached letter recently sent by one of the LPSC Commissioners to Entergy Louisiana. *See* Letter from Mike Francis to Phillip May (Aug. 8, 2022), reproduced *infra*, at **Exhibit A**. Such negotiations, if successful, would spare FERC (and a reviewing court of appeals) the need to deal with these complex cases. But issuance of orders by FERC while settlement negotiations are ongoing may disrupt System Energy's ability to negotiate with other parties.

FERC's Response explains in more detail why it has acted reasonably. System Energy joins in those arguments.

System Energy focuses herein on a separate issue that provides an independent basis to deny mandamus here: LPSC and the retail electricity customers it represents will not—at least regarding most of EL18-152 and EL21-56—suffer any irreparable harm from the amount of time that FERC has taken (or will yet take)

because, as LPSC concedes, "[t]o the extent that System Energy violated the tariff and accounting requirements, or included imprudent costs in the formula, refunds are not limited to 15 months." Pet. 7. In other words, whenever FERC issues final decisions, if LPSC succeeds on the merits in most of EL18-152 and EL21-56, the retail customers it represents will be made whole.[3]

---

[3] While this argument does not apply to consolidated EL17-41, EL18-142, and EL18-204, FERC's length of deliberations in those proceedings is reasonable in light of the fact that FERC's return on equity methodology is currently in flux as explained in text and in FERC's Response, and mandamus should therefore be denied on that basis. Even if FERC's decisional time were unreasonable in those cases and mandamus were warranted, it would be warranted only regarding those cases, not EL21-56 or EL18-152.

**STATEMENT**

**A.    The FERC Proceedings Addressed By The Petition**

*EL21-56*.  LPSC, the Arkansas Public Service Commission, and the Council of the City of New Orleans filed a complaint against System Energy on March 2, 2021, alleging that System Energy acted imprudently in (1) investing in an expansion (known as an "uprate") of the Grand Gulf Nuclear Station ("Grand Gulf") from 2009-2012, *see* EL21-56 Complaint ¶¶ 50-64; and (2) operating Grand Gulf from 2016-2020, *id*. ¶¶ 26-49.[4]  The majority of the relief sought is predicated on the assumption that the complainants will be able to prove a violation of the *existing* tariff insofar as cost inputs (from this investment and operations) were imprudent. *Id*. ¶¶ 67-68.  That violation, if sufficiently pleaded (which System Energy's motion to dismiss contests), and then if substantiated at a hearing, would support refunds that "are not limited to 15 months" (Pet. 7) and instead would go back to the date(s) the violations occurred.  Only the tail end of the complaint seeks changes to the tariff in an attempt (allegedly) to improve System Energy's incentives going forward.  *See* EL21-56 Complaint ¶¶ 69-70.  System Energy filed a motion to dismiss and answer on April 16, 2021, and substantial briefing on that motion ensued.  FERC's decision whether to dismiss the complaint or set it for hearing is pending.

---

[4]    The MPSC intervened in the FERC proceeding and, as described in text, recently entered into a settlement with System Energy that resolves MPSC's claims in that proceeding and in the other FERC proceedings discussed in LPSC's petition

5

*EL17-41, EL18-142, and EL18-204*.  Two of these complaints challenge System Energy's authorized rate of return on equity (a standard component of a formula rate charged by an electric public utility), and the third challenges the capital structure used in System Energy's cost-based formula rate.  They were initiated by complaints filed on January 23, 2017 (by the Arkansas Public Service Commission and the Mississippi Public Service Commission), April 27, 2018 (by LPSC), and September 24, 2018 (by LPSC), respectively.  FERC set them for hearing before an ALJ on September 19, 2017, August 24, 2018, and January 17, 2019, respectively. The proceedings were eventually consolidated at FERC.  While the administrative hearing proceedings were underway, FERC, in another set of cases, issued orders (one of which was over 500 pages long) that it intended to apply to all electric public utilities.  *See, e.g.*, *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569, 169 FERC ¶ 61,129 (2019).  In March 2021, in EL17-41, a FERC ALJ issued an Initial Decision that applied the principles of the Opinion No. 569 series of orders.  *Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 174 FERC ¶ 63,024 (2021).  Meanwhile, the Opinion No. 569 series of orders was appealed to the D.C. Circuit, and the D.C. Circuit recently (in August 2022) vacated and remanded FERC's methodology in those orders.  *MISO Transmission Owners*

_____

for a writ of mandamus.  The System Energy/MPSC settlement was filed in June 2022 and is currently pending at FERC.

6

*v. FERC*, 45 F.4th 248 (D.C. Cir. 2022). A decision by FERC in the consolidated EL17-41, EL18-142, and EL18-204 is pending.

*EL18-152*. LPSC filed the complaint initiating this case on May 18, 2018. The complaint concerns two issues of first impression: *first*, whether and how the costs of a sale-leaseback arrangement may be included in cost-based rates; and *second*, whether and how to reflect the effects of uncertain tax positions in cost-based rates. *See, e.g.*, *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 171 FERC ¶ 63,003, at PP 114, 479 (2020). On September 20, 2018, FERC set the complaint for hearing before an ALJ. *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 164 FERC ¶ 61,189 (2018). On April 6, 2020, the ALJ issued the Initial Decision. In September and November 2020, the Internal Revenue Service issued a determination on the previously-uncertain tax position. FERC's decision on review of the ALJ's Initial Decision is pending.

### B. Comparison FERC Proceedings Initiated By System Energy Or Its Affiliates Under Federal Power Act Section 205 (16 U.S.C. § 824d)

LPSC's Petition (at 16) cherry-picks two Section 205 proceedings filed by System Energy or its affiliates that were processed relatively quickly by FERC, in an attempt to show that FERC is not giving the "same preference" (16 U.S.C. § 824e(b)) to complaints *against* System Energy as it is giving to proceedings filed *by* System Energy or its affiliates. System Energy explains in Argument Point III.A that LPSC's cherry-picked examples of Section 205 proceedings are not

representative: LPSC disregards other Section 205 proceedings that have taken much longer than the Section 206 complaints at issue here. *See Entergy Ark., Inc.*, 175 FERC ¶ 61,136, at PP 1, 5, 7 (2021) (Entergy companies submitted proposed tariff and return on equity on May 17, 2013, FERC's ALJ issued Initial Decision on May 12, 2015, and FERC issued order on review of the Initial Decision on May 20, 2021); *id.*, Concurring Statement of Commissioner Christie, at P 6 (criticizing FERC's delay of "roughly seven-and-a-half years"); *see also, e.g.*, *Sys. Energy Res., Inc.*, 172 FERC ¶ 63,003, at P 1 (July 9, 2020) (Initial Decision on SERI's application for a tariff amendment concerning amount of excess deferred federal income taxes that should be provided to SERI's customers, ruling that SERI must provide $147.3 million more than SERI had proposed; FERC decision on review of Initial Decision still pending more than two years later). These examples show that FERC is not favoring proceedings initiated by System Energy over complaints filed against System Energy.

## **ARGUMENT**

LPSC's Petition misstates the legal standard for mandamus, largely fails to satisfy the prerequisite of irreparable harm, and in any event wholly fails to demonstrate the sort of egregious delay that could potentially warrant mandamus relief. The Petition should therefore be denied.

## I. THE PETITION MISSTATES THE LEGAL STANDARD FOR MANDAMUS

LPSC argues: "This is not an ordinary agency delay case, in which various factors are balanced in evaluating an agency delay, although the writ would be appropriate in those cases as well. *See* [*Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*")]. Instead, it is a case in which FERC is violating a statutory command." Pet. 20.

As FERC shows, and as we also discuss in Argument Point III.A, *infra*, FERC is *not* violating a statutory command. But in any event, LPSC incorrectly suggests that the existence of a statutory command takes a mandamus petition out of the ordinary "agency delay" framework. Instead, such a command is part of that framework, which considers

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) *where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason*; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations and quotation marks omitted; emphasis added).

In this Response (Argument Point II, *infra*), we focus in particular on factor (5) ("the nature and extent of interests prejudiced by delay"), which also appears in

the general standard for mandamus beyond the agency-delay context. *See, e.g.*, *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017) (Mandamus is appropriate where (1) the petitioner has shown a clear and indisputable right to the writ; (2) the court is satisfied that the writ is appropriate under the circumstances; and (3) *the petitioner has no other adequate means to attain the relief [it] desires*.") (internal quotation marks and citations omitted; brackets in original; emphasis added).

After explaining in Point II, *infra*, that the Petition largely fails to demonstrate irreparable harm, we show in Point III, *infra*, that FERC's processing time in any event is within the range of reasonableness and does not violate any statutory command or rule of reason.

## II. THE PETITION DOES NOT ESTABLISH IRREPARABLE HARM REGARDING MOST OF EL18-152 AND EL21-56

LPSC's Petition correctly acknowledges that, "[t]o the extent that System Energy violated the tariff and accounting requirements, or included imprudent costs in the formula, refunds are not limited to 15 months." Pet. 7. But LPSC fails to appreciate the implications of this point for the mandamus standard. If refunds are not limited to 15 months and instead go back to the dates of any tariff violation/use of imprudent costs that FERC may find, then the retail electricity customers LPSC represents will be made whole regardless how long FERC takes to decide.

There remains the question of which aspects of the FERC proceedings at issue involve alleged tariff violations/imprudent cost inputs that, if substantiated, are compensable without any time limitation. The Petition already concedes (correctly) that most of EL18-152 is such a case. *See* Pet. 15 (the Initial Decision "primarily identifies tariff violations that are subject to full refunds").

The Petition fails, however, accurately to report that most of EL21-56 likewise concerns alleged tariff violations/imprudent cost inputs. As explained in the Statement above, the EL21-56 complaint argues that System Energy's operation of Grand Gulf from 2016 to 2020 and its investment in an uprate of Grand Gulf from 2009 to 2012 involved imprudent cost inputs to the formula rate. These allegations are the basis for the complaint's request for refunds of "more than $360 million" (EL21-56 Complaint ¶ 72) plus a to-be-determined additional amount, without any time limitation. Only at the tail end of the complaint, in passing and without any support, are *changes* to the FERC-approved tariff requested, under the guise of giving System Energy better performance incentives going forward. Whether and how those changes, if they are even approved, would reduce Grand Gulf's costs is speculative, and thus likewise does not demonstrate irreparable harm.[5]

---

[5] The Petition mentions a recent outage at Grand Gulf (during which replacement energy had to be procured), but the Petition makes no effort to show that this outage was caused by imprudence or that the proposed tariff changes would have prevented it. Similarly, as to the 2016-2020 period, the complaint focuses on Grand Gulf's capacity factor, and infers that Grand Gulf must have been operated imprudently

To be sure, consolidated EL17-41, EL18-142, and EL18-204 do not involve alleged tariff violations/imprudent cost inputs, but rather involve proposed changes to the tariff on the ground that the existing tariff is unjust or unreasonable, and therefore these cases are subject to the 15-month refund limitation (which period has already passed) and further delay would potentially harm retail electricity customers. But as set forth in the legal standard above, the potential of irreparable harm alone is not enough to support mandamus relief. Other factors, including whether the agency's delay was reasonable, also must be satisfied. Here, as to EL17-41, EL18-142, and EL18-204, FERC's processing time has been reasonable in light of the status of FERC's industry-wide return on equity methodology. *See* Point III.B, *infra*.

## III. LPSC DOES NOT SHOW THAT FERC'S PROCESSING TIMES ARE EGREGIOUS

### A. LPSC Errs In Asserting that FERC Violated Section 206(b)'s "Same Preference" Language

---

because its capacity factor was below the industry average. The complaint makes no attempt to show that particular outages were caused by imprudence as opposed to normal replacement of plant components at this stage of the plant's life. Numerous courts have held that this fails to state a claim of imprudence. *See, e.g.*, *Ill. Com. Comm'n v. Commonw. Edison Co.*, Docket Nos. 86-0511, 87-0123, 1990 WL 10554575, at page 8 of pdf (Ill. Com. Comm'n Nov. 7, 1990) (an "assertion that … [a nuclear plant's] operating capacity should be higher than the industry-average is not probative of a conclusion that [the plant] has operated and managed its nuclear units imprudently …. The specific instances relating to each outage must be reviewed."); *Pub. Serv. Co. of N. H.*, Docket No. 91-011, 1991 WL 494456, at *11 (N.H. P.U.C. Oct. 25, 1991) (similar).

LPSC relies on Section 206(b)'s provision that, "[u]pon institution of a proceeding under this section, the Commission shall give to the decision of such proceeding the same preference as provided under section 824d of this title [*i.e.*, Section 205] and otherwise act as speedily as possible."[6] Pet. 19 (citing 16 U.S.C. § 824e(b)). LPSC then alleges that FERC violated this provision by treating certain proceedings filed *by* System Energy (or its affiliates) under Section 205 with greater dispatch than the instant proceedings filed *against* System Energy under Section 206(a). Pet. 25. LPSC's argument fails for several reasons.

*First*, even if the "same preference" language imposes a time deadline on Section 206(a) proceedings, LPSC cherry-picks two Section 205 proceedings

---

[6] Section 206(b) further provides that, "[i]f no final decision is rendered by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to this section, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision." As to EL18-152 and consolidated EL17-41, EL18-142 and EL18-204, FERC's orders setting those matters for hearing before an ALJ constitute such a statement because they convey that the matters required additional process and a hearing before they could be resolved. As to EL21-56, in which no such order has been issued, and in any event as to all of the proceedings, the Petition fails to identify any irreparable harm from the absence of a statement, *Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1218 (D.C. Cir. 2009) (party must "allege they suffered harm as a result of FERC's failure to keep them informed"), and indeed the Petition's request for relief does not even ask that this Court require FERC to issue such a statement.

Concerning Section 206(b)'s provision that FERC must act "as speedily as possible," the D.C. Circuit has held that this language "does not … set a deadline for action," but instead is part of the requirement to provide a statement of reasons if a decision will not issue within 180 days. *Exxon Mobil Corp.*, 571 F.3d at 1218.

(ER22-24 and ER22-736[7]) to assert that the deadline was violated. LPSC ignores other Section 205 proceedings that FERC took as long or longer than the instant Section 206(a) proceedings to resolve. *See Entergy Ark., Inc.*, 175 FERC ¶ 61,136, at PP 1, 5, 7 (2021) (Entergy companies submitted proposed tariff and return on equity on May 17, 2013, FERC's ALJ issued Initial Decision on May 12, 2015, and FERC issued order on review of the Initial Decision on May 20, 2021); *id.*, Concurring Statement of Commissioner Christie, at P 6 (criticizing FERC's delay of "roughly seven-and-a-half years"); *see also, e.g.*, *Sys. Energy Res., Inc.*, 172 FERC ¶ 63,003, at P 1 (2020) (Initial Decision on SERI's application for a tariff amendment concerning amount of excess deferred federal income taxes that should be provided to SERI's customers, ruling that SERI must provide $147.3 million more than SERI had proposed; FERC decision on review of Initial Decision still pending more than two years later). Taking these Section 205 examples into account shows that, if all Section 205 cases are compared with all Section 206(a) cases, FERC is indeed deciding both types of cases within the same approximate periods of time.

*Second*, the "same preference" language applies only to a complaint under Section 206(a), which concerns an attempt to argue that an existing rate/tariff is

---

[7]  Moreover, as to these dockets, LPSC focuses only on the time between the filing of the Complaint and FERC's order setting the dockets for a hearing with an ALJ. LPSC disregards that both are still ongoing in settlement proceedings almost a year after the initial filings.

unjust or unreasonable and seeks a change in that rate/tariff. But as explained in Point II *supra*, most of the relief sought in EL21-56 and EL18-152 is not under Section 206(a) because it does not seek a change in the rate/tariff; instead, it alleges that the existing rate/tariff was violated. Refunds for such a rate violation are sought under Section 309 (16 U.S.C. § 825h), not Section 206(a). *See, e.g.*, *Pub. Utils. Comm'n of Cal. v. FERC*, 462 F.3d 1027, 1051 (9th Cir. 2006).

## B. FERC's Processing Times In The Underlying Proceedings Are Reasonable, And Certainly Not Egregious

As discussed in the Introduction, in the most on-point decision by this Court, this Court summarily denied LPSC's petition for mandamus where FERC's processing times ranged from one-and-a-half to two-and-a-half years. *See In re: La. Pub. Serv. Comm'n*, No. 14-30073, Petition of the Louisiana Public Service Commission for a Writ of Mandamus, Doc. No. 00512515157, at 2-4 (5th Cir. Jan. 29, 2014); *id.*, Order, Doc. No. 00512558916 (5th Cir. Mar. 12, 2014) (*per curiam*) (summarily denying petition).

FERC's processing times here are generally shorter, and are easily explained by the complexity of the issues presented:

*EL21-56*. The processing time since the complaint was filed in March 2021 is approximately nineteen months. But approximately five of those months were taken up by briefing on System Energy's motion to dismiss, and the case involves many past years of operation of and investment in Grand Gulf. Moreover, LPSC's

delay criticism is undermined by the fact that it waited almost nine years (since the Grand Gulf uprate was completed in 2012) to claim at FERC that the uprate was imprudent.

*EL17-41, EL18-142, and EL18-204*.  These cases present System Energy-specific and industry-wide issues of how to determine a public utility's rate of return on equity and capital structure.  That FERC's decision on review of the Initial Decision is still pending is readily explained by the facts that FERC's return-on-equity methodology for all electric public utilities was before the D.C. Circuit and the D.C. Circuit issued a decision only last month (on August 9, 2022) remanding the case to FERC.  *See MISO Transmission Owners*, 45 F.4th 248.  FERC must now issue an order on remand, which may revise the return-on-equity methodology for all electric utilities.

*EL18-152*.  Although FERC's decision on review of the April 6, 2020 Initial Decision has been pending now for just over two years, that length of time is reasonable because the complaint concerns two issues of first impression:  *first*, whether and how the costs of a sale-leaseback arrangement (of a portion of Grand Gulf) may be included in cost-based rates; and *second*, whether and how to reflect the effects of uncertain tax positions in cost-based rates.  Additionally, FERC must take into account Internal Revenue Service rulings that issued after the Initial Decision.

## CONCLUSION

The petition for a writ of mandamus should be denied.

Dated: Sept. 26, 2022

Respectfully submitted,

*/s/ Sanford I. Weisburst*
QUINN EMANUEL URQUHART &
   SULLIVAN LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
(212) 849-7170
sandyweisburst@quinnemanuel.com

*Counsel for SERI, Entergy Services,
Entergy Operations, and Entergy
Corporation*

# CERTIFICATE OF COMPLIANCE

I certify that this response complies with Federal Rules of Appellate Procedure 21(d)(1) because it contains 4,006 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

I further certify that this response complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in Times New Roman 14-point font using Microsoft Word.

*s/ Sanford I. Weisburst*
QUINN EMANUEL URQUHART &
  SULLIVAN LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
(212) 849-7170
sandyweisburst@quinnemanuel.com

*Counsel for SERI, Entergy Services, Entergy Operations, and Entergy Corporation*

## CERTIFICATE OF SERVICE

In accordance with Federal Rules of Appellate Procedure 25(d) and 5th Cir. R. 25 regarding electronic case filing, I hereby certify that I have this day served the foregoing document upon the counsel listed below via email through the Court's CM/ECF system or via electronic mail, on this 26th day of September, 2022.

*s/ Sanford I. Weisburst*
QUINN EMANUEL URQUHART &
   SULLIVAN LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
(212) 849-7170
sandyweisburst@quinnemanuel.com

*Counsel for SERI, Entergy Services, Entergy Operations, and Entergy Corporation*


# EXHIBIT A



*Louisiana Public Service Commission*

222 N. Parkerson Avenue
Crowley, Louisiana 70526

**Mike Francis**
*Commissioner*

*District IV*

*Main Office: (337) 514-2000*
*Toll Free: (800) 256-2490*
*Fax: (337) 514-2565*

August 8, 2022

**VIA U.S. MAIL AND EMAIL**

Philip R. May
President
Entergy Louisiana LLC
4809 Jefferson Highway
Jefferson, Louisiana 70121

Dear Mr. May,

I would like to commend you and Mark Kleehammer for appearing before the Louisiana Public Service Commission at its July business meeting. The comments of Commissioners reflected the high level of frustration concerning the soaring electricity bills that Louisiana customers are receiving. As several Commissioners stated, our offices are inundated with complaints and concerns.

You answered the questions forthrightly and politely, which I appreciate. I do wonder, however, if Entergy Louisiana is doing everything it can to lower Entergy Louisiana electric bills.

A case that comes to mind is Entergy's proposed settlement with the Mississippi Public Service Commission over the litigation concerning past costs included in rates and the subpar performance of the Grand Gulf plant. Entergy settled with the Mississippi Commission without making any offer, or even offering to negotiate, with our Commission.

I do not believe, nor do my fellow Commissioners believe, that the offer of $588 million for claims exceeding $2 billion is adequate, particularly in light of administrative law judge decisions that have already been issued in two of the cases and provide for refunds exceeding Entergy's offer. These decisions are currently pending on review at FERC.

Additionally, we do not believe it is appropriate to waive tariff provisions that could protect consumers from paying excessive costs in the future, or from Grand Gulf's poor

performance. The settlement provides for retail regulators to waive all potential claims, "known or unknown," which we cannot do.

For the past month Grand Gulf has been in an unplanned outage, with a complete shutdown on most days. Customers will pay the full cost of Grand Gulf without receiving energy from the unit, so customers will also pay the very high cost of replacement energy. The lost energy for July alone could cost Louisiana customers about $12 million. I do not see how this situation is reasonable or fair.

As a pro-business Republican, I support providing a fair return to the companies we regulate. But no business in competition could charge customers for a product it does not deliver.

I ask that you, as president of Entergy Louisiana, advocate for a more reasonable offer with other Entergy executives and take steps to bring prompt relief to Louisiana customers.

Sincerely,

Mike Francis
Commissioner

cc:     Mark Kleehammer
        Brandon Frey
        Kathryn Bowman
        Commissioners