## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| | ) | |
| In re:  **Louisiana Public Service Commission,** | ) | **No. 22-60458** |
| | ) | |
| **Petitioner.** | ) | |
| | ) | |

### RESPONSE OF FEDERAL ENERGY REGULATORY COMMISSION

The Federal Energy Regulatory Commission (Commission or FERC) submits its response to this Court's January 18, 2023 "Non-Dispositive Published Opinion."  In that Opinion, the Court ordered the Commission "to provide . . . a meaningful explanation for the length of time the Commission takes for final action in Section 206 complaint proceedings, including those at issue here."  Opinion at 7.

At all times, the Commission remains attentive and responsive to its statutory and public interest responsibilities in acting on consumer rate complaints filed under section 206 of the Federal Power Act, 16 U.S.C. § 824e.  This includes recent action on complaints filed by petitioner Louisiana Public Service Commission, that are the focus of Louisiana's mandamus petition, in both November and December, 2022.  *See* Letter filed by Respondent FERC, Doc. 65 (Nov. 18, 2022); Letter filed by Respondent FERC, Doc. 71 (Dec. 27, 2022).

*Processing of Section 206 complaint proceedings*.  In response to the

Court's January 18 Opinion, Commission staff initiated a comprehensive review of

the agency's processing of Federal Power Act Section 206 complaints.[1]  Staff used

the Commission's eLibrary docketing and recordkeeping system, *see*

https://elibrary.ferc.gov/eLibrary/search, to locate and review dockets of Section

206 matters that have been filed since January 23, 2017, in order to provide an

overview of the Commission's process for deciding these matters.  (Commission

staff chose January 23, 2017 as the starting point for its review because that is the

date of filing of the earliest complaint that was consolidated with the earliest of the

Louisiana complaints identified in its mandamus petition.)  Staff identified 145

Section 206 complaint proceedings initiated since January 23, 2017 in which the

Commission has issued at least an initial order.  In the overwhelming majority, 116

of those 145 proceedings (80%), the Commission issued a merits order, subject to

agency rehearing and judicial review, less than two years from when the complaint

was filed.  And more than half (85 or 58.6%) of these proceedings were resolved

on the merits within one year of the complaint being filed.

As explained in the Commission's September 26, 2022 response to the

petition for mandamus, the Commission gives careful consideration to all of the

matters before it, including Section 206 complaint proceedings and other Entergy

---

[1] A statistical summary of this research is provided in an appendix included herein.

System matters. FERC Response at 17, 22. The length of time a specific

proceeding requires is influenced by a number of factors, most notably, whether

the Commission is able to issue a merits ruling on the basis of the complaint and

responses thereto, or whether the issues presented require further evidentiary and

record-development procedures before the agency can issue a merits decision. All

three of the proceedings that are the subject of Louisiana's mandamus petition here

required additional procedures – requested by Louisiana and other parties –

because in all three proceedings the Commission determined that the complaints

raised material issues of fact that warranted further development of the record

before the Commission could render a decision on the merits.

    *Current Status of the Proceedings at Issue Here.* The Louisiana complaints

identified in its mandamus petition are among the most complicated and

contentious of the complaints the Commission receives; they follow years of

litigation before the agency, this Court, and the D.C. Circuit. *See* FERC Response

at 5-17. As this Court is aware, the Commission recently issued a 167-page merits

decision in the Sale-Leaseback Proceeding, with one Commissioner issuing a

dissenting statement. *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*,

Opinion No. 581, FERC Docket EL18-152, 181 FERC ¶ 61,243 (Dec. 23, 2022).

In addition, the Commission recently issued an 80-page merits decision in a related

section 205 rate proceeding with one Commissioner issuing a partial concurrence

and partial dissent.  *See Sys. Energy Res., Inc.*, Order on Initial Decision and

Establishing A Show Cause Proceeding, FERC Docket ER18-1182, 181 FERC

¶ 61,244 (Dec. 23, 2022).  In requesting "confirmation" of the Commission's

refund requirement, Louisiana recently has stated that FERC Opinion No. 581 "is

well-reasoned and fully supported by the evidence, Commission regulations, and

its [tax] normalization policy."  Louisiana Request for Confirmation of the Refund

Requirement in Opinion No. 581, and Provisional Request for Clarification and

Rehearing, FERC Docket EL18-152 (filed Jan. 23, 2023).  In addition, System

Energy has sought agency rehearing of Opinion No. 581.

        The Commission also recently issued a 70-page order setting the Grand Gulf

Prudence Complaint for settlement judge and hearing judge procedures.  *La. Pub.*

*Serv. Comm'n v. Sys. Energy Res., Inc.*, Order on Complaint and Establishing

Hearing and Settlement Judge Procedures, 181 FERC ¶ 61,135 (Nov. 18, 2022).

System Energy has sought rehearing of that order.  *See La. Pub. Serv. Comm'n v.*

*Sys. Energy Res., Inc.*, Notice of Denial of Rehearing by Operation of Law and

Providing for Further Consideration, 182 FERC ¶ 62,024 (Jan. 17, 2023).  A

settlement conference was scheduled for January 23, 2023.  *See La. Pub. Serv.*

*Comm'n v. Sys. Energy Res., Inc.*, Order Scheduling Settlement Conference, FERC

Docket EL21-56 (Jan. 10, 2023).  The remaining proceeding at issue in Louisiana's

mandamus petition concerns the Commission's methodology for calculating return

on equity, which the Commission is presently revising following a 2022 remand

from the D.C. Circuit. *See MISO Transmission Owners v. FERC*, 45 F.4th 248

(D.C. Cir. 2022) (vacating and remanding Commission order for additional

explanation of return on equity methodology).

The Court noted in its January 18 Opinion (Op. at 5) that the Commission

"appears to regularly ignore" the statutory obligation to provide an explanation

when it has not concluded a complaint proceeding within 180 days. In fact, as

explained below, the agency regularly satisfies this timing and explanation

requirement. And as explained below, there is nothing "regular" about the

Louisiana complaint proceedings. They are unfortunate outliers, not because the

Commission is inattentive, but because those proceedings reflect many years of

tenacious litigation, before the agency and on review to the courts of appeals, and

because the Commission is repeatedly confronted with new complaints and new

filings, to process in a coordinated manner. The Commission will conclude these

complaint proceedings as expeditiously as possible. If the Court remains

dissatisfied as to the pace of the Commission's processing of the Louisiana

complaint proceedings referenced in its mandamus petition, the Court can choose

to continue to retain jurisdiction over this case, *see* Op. at 7, with the Commission

providing periodic status reports to advise the Court of continuing progress.

## The Commission's Operations

Louisiana's mandamus petition implicates the Commission's regulation of the interstate transmission and wholesale sale of electricity under the Federal Power Act. *See* 16 U.S.C. § 824; *see generally Towns of Concord, Norwood, and Wellesley v. FERC*, 955 F.2d 67, 68 (D.C Cir. 1992). Section 206 complaints are only a fraction of the Commission's jurisdiction over the electricity markets. *See* 16 U.S.C. §§ 824-825. And regulation of interstate electric markets represents only a fraction of the Commission's wide and varied jurisdiction, which presents many types of proceedings over which the Commission must use its limited resources to balance.

Another federal statute, the Natural Gas Act, vests the Commission with jurisdiction over the transportation and wholesale sale of natural gas in interstate commerce. 15 U.S.C. § 717(b), (c); *see Grynberg v. FERC*, 71 F.3d 413, 415 (D.C. Cir. 1995); *Municipal Defense Group v. FERC*, 170 F.3d 197 (D.C. Cir. 1999).[2] The Commission reviews proposals to site, construct, and operate liquefied natural gas terminals, interstate natural gas pipelines, and export facilities under the Natural Gas Act, which requires environmental review compliance with NEPA and

---

[2] Section 4 of the Natural Gas Act directs that "the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible." 15 U.S.C. § 717c(e).

other federal statutes. *See* 15 U.S.C. §§ 717b(a); 717f(e); *EarthReports, Inc. v. FERC*, 828 F.3d 949 (D.C. Cir. 2016); *Mississippi River Transmission Corp. v. FERC*, 969 F.2d 1215 (D.C. Cir. 1992). The Commission also has jurisdiction over the licensing of hydroelectric projects, which also requires compliance with NEPA and other statutes. *See Turlock Irrigation Dist. v. FERC*, 36 F.4th 1179, 1181 (D.C. Cir. 2022) (citing 16 U.S.C. §§ 7979(e), 817(1)); *Alabama Power Co. v. FERC*, 979 F.3d 1561 (D.C. Cir. 1992); *Keating v. FERC*, 114 F.3d 1265 (D.C. Cir. 1997); *City of New Martinsville, W.Va. v. FERC*, 102 F.3d 567 (D.C. Cir. 1996). And under the Interstate Commerce Act, the Commission is responsible for, among other things, ensuring that oil pipeline rates are just and reasonable and ensuring open access to the interstate oil pipeline system. *See Ass'n of Oil Pipe Lines v. FERC*, 876 F.3d 336, 339 (D.C. Cir. 2017); *Flint Hills Resources Alaska, LLC v. FERC*, 631 F.3d 543 (D.C. Cir. 2011); *Buckeye Partners, L.P. v. FERC*, 2022 WL 1582311 (5th Cir. May 13, 2022) (transferring to the D.C. Circuit consolidated petitions for review of the oil pipeline index).

In Fiscal Year 2021, the Commission issued over 5,700 orders in rate filings related to its jurisdiction over electricity sales.[3]

### The Commission's Processing of Section 206 Complaint Proceedings

When addressing Federal Power Act Section 206 complaints, the Commission's first order may resolve the complaint or it may require further proceedings.  (In some instances the Commission's initial order will resolve some claims on the merits while requiring further proceedings for others.)  Specifically, the Commission's initial order may dismiss a complaint, deny a complaint, grant a complaint, or do any of these in whole or in part.  In such instances, the Commission's initial order constitutes a final order, subject to agency rehearing and judicial review.[4]

---

[3] The chart below presents the Commission's orders in rate filing proceedings.

|           | FY 2018 | FY 2019 | FY 2020 | FY 2021 |
|-----------|---------|---------|---------|---------|
| Electric  | 4,525   | 5,397   | 5,769   | 5,738   |
| Gas       | 1,451   | 1,933   | 1,463   | 1,363   |
| Oil       | 862     | 875     | 916     | 837     |
| Total     | 6,838   | 8,205   | 8,148   | 7,938   |

*See* FERC, *FY2022 Congressional Budget Justification* at 22 (May 28, 2021); FERC, *FY2023 Congressional Budget Justification* at 28 (Apr. 4, 2022).

[4] Occasionally, the parties will reach a settlement before the Commission issues an initial order.  In such instances the Commission's initial order may approve the settlement, which is a final merits order, or require further process.  *See, e.g.*, *N.C. Elec. Membership Corp. v. Duke Energy Progress, LLC*,  Docket No. EL21-9-000, 181 FERC ¶ 61,111 (Nov. 7, 2022) (approving settlement that was filed after

If the Commission is unable to resolve the proceeding on the basis of the complaint, the respondent's answer to the complaint, and any other pleadings in the record, it may (1) request additional briefing before the Commission (called a "paper hearing"), (2) establish a technical conference, or (3) establish trial-type evidentiary hearing or settlement judge procedures before an administrative law judge.[5]  Additional process may be necessary when the complaint and responses show there are material facts in dispute.  *See, e.g., Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, EL17-41, 160 FERC ¶ 61,141, P 15 (Sept. 29, 2017) ("We find that the Complaint raises issues of material fact that cannot be resolved upon the record before us and that are more appropriately addressed in the hearing and settlement judge procedures we order below.").  In some cases, complainants request the Commission to institute an investigation, as occurred in the Grand Gulf Prudence Complaint (EL21-56).  *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, EL21-56, 181 FERC ¶ 61,135, P 2 (Nov. 18, 2022) ("Complainants request that the Commission institute an investigation to address SERI's imprudence . . ..).

---

parties had requested that the Commission hold complaint in abeyance pending settlement discussions).

[5] Occasionally, the Commission may require multiple of these processes to resolve a complaint proceeding.  For example, in two consolidated proceedings, the Commission ordered a paper hearing on some issues, then later required a technical conference, and then further ordered hearing and settlement judge procedures.  *See Am. Elec. Power Serv. Corp. v. Midcontinent Indep. Sys. Operator, Inc.*, FERC Dockets EL17-89 & EL19-60, 180 FERC ¶ 61,157 (Sept. 7, 2022).

*Paper Hearings*.  When the Commission believes it can resolve a Section 206 complaint proceeding with additional briefing, rather than establishing a trial-type evidentiary hearing, it will order a "paper hearing," directing the parties to file additional briefing on specific issues identified in the initial order, and often permitting both initial and reply briefs.  After considering the briefs, the Commission will issue an order on the merits.

*Technical Conference*.  Occasionally, the Commission will determine in the initial order that there are technical questions raised by the complaint and responsive pleadings that would be best resolved by a technical conference.  A technical conference is typically an on the record public forum in which parties to a proceeding meet with Commission staff to discuss the merits of a proceeding. Sometimes parties are also permitted to make presentations.  A technical conference provides a forum for the parties, the Commission, and the public to better understand the issues through discussion, rather than relying on just paper briefing.  Post-conference comments are often solicited and filed.  *See, e.g.*, *Old Dominion Elec. Coop. & Direct Energy Bus., LLC on Behalf of Itself & Its Affiliate, Direct Energy Bus. Mktg., LLC & Am. Mun. Power, Inc.*, 162 FERC ¶ 61,160 (2018).

*Hearing and Settlement Judge Procedures*.  For particularly complex cases in which there are questions of material fact unresolved in the complaint and

responsive pleadings, the Commission may order hearing and/or settlement judge procedures before an administrative law judge. When the Commission does so, in compliance with Federal Power Act Section 206(b), it typically provides an estimated time frame for the hearing procedures, based on the complexity of the case, and an expected time for a final merits resolution by the Commission.[6] *See infra* pp. 28-29, 40-41, 44 (explaining estimates for Louisiana complaints).

When the Commission determines that there are issues of material fact for an electric matter that cannot be resolved on the basis of the written record, necessitating a trial-type evidentiary hearing, the Commission typically holds that hearing in abeyance and allows the parties to try to voluntarily reach settlement under the guidance of a settlement judge. Settlement judge procedures are conducted before an administrative law judge designated by the chief administrative law judge. When ordering settlement judge procedures, the

---

[6] Section 206(b) provides: "If no final decision is rendered by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to this section, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision." As the D.C. Circuit has explained, the "statute does not, however, set a deadline for action"; rather, it "merely requires that FERC explain its inaction." *Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1218 (D.C. Cir. 2007). The statute's 180-day period begins upon "initiation of a proceeding," which could be read as either starting upon the filing of a complaint, or upon the Commission's initiation of hearing or other procedures. The Commission has treated the "initiation of a proceeding" as occurring when it directs further proceedings.

11

Commission typically directs the appointed settlement judge to issue a report after 60 days and at intervals thereafter. *See infra* pp. 28-32, 39-41, 44-45 (noting settlement efforts in Louisiana complaint proceedings). This is to ensure that if settlement discussions are not productive, they will be terminated and hearing procedures can commence. The length of the settlement process is dependent on the parties' willingness to continue those discussions, and parties are not required to settle or even engage in such discussions. They may waive settlement judge procedures and request that the chief administrative law judge proceed directly to hearing procedures. They may, on the other hand, also continue settlement discussions for a substantial period of time but ultimately not settle their issues and only then proceed to hearing.

If settlement processes are terminated, the matter moves to the hearing phase. Hearing procedures, which typically include discovery, briefing, and live testimony at a trial-type proceeding, are conducted before an administrative law judge designated by the chief administrative law judge. *See* 18 C.F.R. §§ 385.501-512 ("Hearings"). The length of the hearing depends on the complexity of the matter. A procedural schedule established for a particular proceeding allows the parties time to conduct discovery (submitting written testimony and taking depositions of witnesses), prepare and file briefs, and examine witnesses in a trial-type proceeding; the schedule also may provide for post-hearing briefing and oral

argument.  The presiding judge must then consider the record and draft an initial decision.  *See* 18 C.F.R. §§ 385.704-708.  The timing for procedures before an administrative law judge is normally decided by the parties and the administrative law judge.

The Commission's Office of Administrative Law Judges has provided for proposed timetables (called "Tracks") depending on the type of case.  *See* FERC, *FERC News Release: Chairman Hoecker Announces Accelerated Proceedings*, NR99-69 (Oct. 27, 1999); FERC Office of Administrative Law Judges, *Tracks for Proceedings Set for Hearing* (Sept. 2021).  In "Track I," the hearing date should occur 19.5 weeks after the order designating a presiding judge, with the initial decision 29.5 weeks after the order designating a presiding judge.  In "Track II," the hearing should occur 32 weeks after the order designating a presiding judge, with the initial decision 47 weeks after the same order.  And in "Track III," which is for "exceptionally complex cases," the hearing should occur 42 weeks after the order designating a presiding judge, with the initial decision 63 weeks after the same order.

Despite the administrative law judge's initial determination of the schedule, parties can work with the judge to set a different schedule.  For example, in the Sale-Leaseback Proceeding referenced in Louisiana's mandamus petition, the parties requested a complex Track III schedule.  *See La. Pub. Serv. Comm'n v. Sys.*

*Energy Res., Inc.*, EL18-152, Unopposed Motion of System Energy Resources, Inc. for Adoption of Track III Procedural Schedule (Nov. 27, 2018) ("As the participants and [administrative law judge] have recognized, Track III is the appropriate procedural schedule in this matter because it is an 'exceptionally complex case."); *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, EL18-152, Order of Chief Judge Extending Track III Proceeding Standards (Dec. 10, 2018) (granting unopposed motion for adoption of procedural schedule). These track schedules are not set in stone: in some cases, parties will voluntarily agree during the hearing phase for extensions of the procedural schedule, which the presiding judge will grant or deny.

When the decision is made to set a complaint for hearing, there are issues of material fact that cannot be resolved based on the record before the Commission. These facts need to be examined in a detailed, evidentiary-based hearing. It is a full hearing with discovery, testimony and briefing. The hearing culminates in the Initial Decision where the presiding judge makes decisions on all issues/allegations raised. Initial Decisions are generally very detailed and fact-specific, as the administrative law judge must work through all of the documentary and testimonial evidence and briefing to address the parties' arguments and reach a determination on the disputed facts and the issues raised in the complaint. This results in detailed and lengthy initial decisions, as seen in the Sale-Leaseback and Return on Equity

proceedings.  *See, e.g.*, *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 171 FERC ¶ 63,003, Initial Decision (Apr. 6, 2020) ("Sale-Leaseback Initial Decision"); *Ark. Pub. Serv. Comm'n v. Sys. Entergy Res., Inc.*, 174 FERC ¶ 63,024, Initial Decision (Mar. 24, 2021) ("Return on Equity Initial Decision").

Following the issuance of an initial decision, parties typically have 30 days to draft briefs on exceptions to the initial decision, and another 30 days to draft briefs opposing exceptions, though they may seek extensions of these deadlines and often request leave to file replies to oppositions.  Finally, the Commission must review the initial decision, considering the entire record established to date, and issue a merits order.  *See* 18 C.F.R. §§ 385.711-712.

### The Timing of Final Action in Section 206 Complaint Proceedings

To respond fully to this Court's directive, Commission staff has performed extensive research to describe the Commission's processing of section 206 complaints.  The result is that in a vast majority (80%) of Section 206 complaint proceedings the Commission issues a merits order within two years.  In more than half of the proceedings (58.6%) the Commission issues a merits order within one year.  Proceedings in which the Commission orders additional procedures, rather than issuing a merits order on the basis of the complaint and responsive pleadings, require additional time.  But even in those proceedings, more than 47% were resolved on the merits within two years.

The most complex proceedings, including all of the complaints at issue here, are set for settlement and hearing procedures before an administrative law judge. The time these procedures take is largely dictated by the parties based on how extensive their settlement negotiations are, how much discovery and briefing they would like, and how many witnesses and pieces of testimony they present at the hearing.  So while these most complex proceedings may take more than two years to complete, the parties have substantial input into the timing of such matters.

Staff used the Commission's eLibrary system to identify Commission orders issued in Federal Power Act Section 206 complaint proceedings that were initiated since January 23, 2017.  Staff looked for complaints filed since January 23, 2017 because that is the date that Arkansas filed a complaint (FERC Docket EL17-41), which has been consolidated with Louisiana's Return on Equity complaints (which were filed in April 2018 and September 2018).  Staff identified 145 Section 206 complaint proceedings that were initiated since January 23, 2017, in which the Commission has issued an initial order.  This does not include the Section 206 complaints filed since January 23, 2017, for which the Commission has not issued an initial order (of which there are 22).  The majority of those pending complaints (13 of 22) were filed within the last 180 days and all within the past two years.

As explained in greater detail below, this research found that in 116 (80%) of these 145 Section 206 complaint proceedings the Commission issued a final

merits determination within two years of the complaint being filed.[7]  In 85 (58.6%) of these proceedings the Commission issued a final merits determination within 1 year of the complaint being filed.  Of the remaining 29 proceedings, most (21) involved the Commission ordering additional procedures (and 3 of those have been pending for less than two years).  In a majority of Section 206 complaint proceedings, additional process is not necessary and the Commission issues a final merits order within two years.  And even in those proceedings requiring additional process, a merits order was issued within two years of the filing of the complaint in 47% of them.

Complaint proceedings in which the Commission directs additional process, understandably, take more time than those in which the Commission disposes of the complaint in its initial order.[8]  The additional time is the result of both

---

[7] The Commission treats a merits order dismissing, denying, or granting a complaint, or some combination thereof, as "final action" on a complaint. However, before an "aggrieved" party can obtain judicial review of such an order, it must seek rehearing before the Commission.  *See* 16 U.S.C. § 825*l*(b). Rehearing may be requested within 30 days of the Commission's issuance of an order.  *Id.* § 825*l*(a).  If the Commission does not act on rehearing within 30 days, rehearing is deemed denied and the party seeking rehearing may then petition for review to a federal appellate court.  *See id.*; *Allegheny Def. Proj. v. FERC*, 964 F.3d 1, 16-17 (D.C. Cir. 2020) (en banc).

[8] In some of these proceedings the Commission's initial order may be a final merits order on certain issues or claims, while other issues or claims receive additional process.  *See, e.g.*, *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, Order on Complaint and Establishing Hearing and Settlement Judge Procedures, 181 FERC ¶ 61,135, PP 177-185 (Nov. 18, 2022) (setting two issues for settlement and

additional procedures, which can include a multi-week trial before an administrative law judge, and the complexity of the proceeding. Indeed, additional procedures are only necessary when the parties' initial filings—the complaint and any responses—do not provide the Commission with the information necessary to decide the issues presented.

One factor that has impacted the Commission's consideration of the complaints at issue here, and all Section 206 complaints pending the past two years, is the Commission's efforts to revise and streamline its process for issuing orders on rehearing, including in Section 206 complaint proceedings, following the D.C. Circuit's decision in *Allegheny Def. Project v. FERC*, 964 F.3d 1, 16-17 (D.C. Cir. 2020) (en banc). As a result, additional Commission resources must be dedicated to resolving requests for rehearing in all Federal Power Act and Natural Gas Act matters, including Section 205 rate proceedings and Section 206 complaint proceedings, to ensure compliance with those statutes' timeliness requirements. When the *Allegheny* opinion issued, the Commission necessarily had to address a substantial backlog of rehearing requests that had been pending for longer than 30 days. This resulted in an unusual wave of rehearing orders and

---

hearing judge procedures while denying the complaint on the third issue). To obtain a conservative estimate of the Commission's timing on complaints, Commission staff treated these initial orders as being non-final when determining the length of time for final merits action on a Section 206 complaint.

subsequent petitions for review of those orders. *Compare* D.C. Circuit Argument Calendar for 2020-2021 Term (14 FERC cases set for argument), *with* D.C. Circuit Argument Calendar for 2021-2022 Term (42 FERC cases set for argument). With that backlog having been largely cleared and the Commission's new procedures in place, the Commission anticipates faster processing of all initial proceedings, including Section 206 complaints.

*Timing of Initial Orders.* Of the 145 staff-identified complaint proceedings, in 73 (50.3%) the Commission issued an initial order within 180 days of the filing of the complaint. That includes 16 initial orders that were issued within 3 months of the complaint being filed. An initial order was issued within one-year of the complaint being filed in 115 of the 145 identified proceedings (79.3%), and an initial order was issued between one and two years in an additional 18 proceedings. In only 12 of the 145 identified proceedings did the Commission issue an initial order more than two years after the complaint was filed.

*Result of the Initial Order.* Of the 145 staff-identified proceedings, the initial order was a final merits determination—an order dismissing, granting, or denying the complaint, or some combination thereof—in 108 of the proceedings. In 37 proceedings, the Commission's initial order directed further process. However, in some of those proceedings the initial order was a final merits determination on certain issues or claims (granting, denying, or dismissing them)

19

while ordering further process on certain other issues. *See, e.g.*, *La. Pub. Serv. Comm'n v. Entergy Corp.*, FERC Docket EL22-6, 180 FERC ¶ 61,085 (Aug. 9, 2022) (dismissing certain claims and setting remaining claims for settlement and hearing judge procedures). And in at least one proceeding, the additional hearing and settlement judge procedures were ordered solely for determining the appropriate refunds. *See Am. Mun. Power, Inc. v. Midcontinent Indep. Sys. Operator, Inc.*, 167 FERC ¶ 61,148 (May 16, 2019) (consolidated proceedings granting in part and denying in part complaints, and setting for hearing and settlement judge proceedings determination of appropriate refunds).

Of the 108 initial orders that constitute final merits orders, 53 were issued within 180 days of the complaint being filed, 83 were issued within one-year of the complaint being filed, and 100 were issued within 2 years of the complaint being filed.

*Paper Hearings.* The further process ordered by the Commission included 12 proceedings in which the Commission requested further briefing to the agency. Of those proceedings, 8 resulted in a final merits order from the Commission. Four of these orders were issued within two years of the complaint being filed, and the other four were issued between two and three years after the complaint was filed. Two consolidated proceedings resulted in settlement after further orders

directing a technical conference and settlement judge procedures, and two complaints are still pending before the Commission. *See supra* n.4.

For example, in *Neptune Regional Transmission System, LLC. v. PJM Interconnection, L.L.C.*, EL21-39, one of the pending proceedings, the complaint was filed on December 31, 2020, the Commission issued an initial order establishing a paper hearing on June 25, 2021, and the last response/reply brief regarding the paper hearing was filed on April 28, 2022. In addition, on April 11, 2022, PJM Interconnection, L.L.C. made a Section 205 tariff filing regarding a related issue and on June 10, 2022, the Commission issued an order accepting that tariff filing and establishing paper hearing procedures and consolidating those procedures with the pending procedures in the Section 206 complaint proceeding. *See PPL Electric Utilities Corp.*, FERC Dockets ER22-1606 & EL21-39, 179 FERC ¶ 61,176 (June 10, 2022). The last filing in the consolidated proceeding was made on December 1, 2022.

*Technical Conferences.* In four proceedings, the Commission's initial order directed Commission staff to convene a technical conference. In two of these proceedings a merits order was issued after a technical conference. In both of these, the merits order was issued within two years of the complaint being filed. *See EDF Renewable Energy, Inc. v. Midcontinent Indep. Sys. Operator, Inc.*, FERC Docket EL18-26, Order on Complaint and Establishing Technical

Conference, 162 FERC ¶ 61,085 (Feb. 2, 2018) (directing Commission staff to convene a technical conference); *id.* P 1 (noting Section 206 complaint filed Oct. 30, 2017); *id.*, Order on Complaint and Technical Conference, 168 FERC ¶ 61,173 (Sept. 19, 2019) (granting in part and denying in part complaint); *Cal. Pub. Utils. Comm'n v. Pac. Gas & Elec. Co.*, FERC Docket EL17-45, Order Denying Complaint, 164 FERC ¶ 61,161 (Aug. 31, 2018) (order following a technical conference in response to a complaint filed against a utility by a state regulatory commission and certain of the utility's customers related to alleged transmission planning deficiencies).[9]  This complaint was filed just two days before the Commission lost its quorum for several months starting in February 2017 and lasting until August 9, 2017, during which time the Commission could not act on numerous matters, including this complaint because of the lack of a quorum.

In the other two consolidated proceedings, the Commission's initial order directing a technical conference was issued within one year of the complaints' filing.  Shortly after the Commission ordered the technical conference, the parties jointly requested appointment of a settlement judge and postponement of the technical conference.  This process resulted in a contested settlement that was accepted by the Commission (in a related docket) slightly less than three years

---

[9] This technical conference also addressed similar issues concerning another utility that had made a Section 205 rate filing.

after the complaints were filed. *See PJM Interconnection, L.L.C.*, FERC Docket

ER19-1651, Order on Contested Settlement, 170 FERC ¶ 61,258 (Mar. 26, 2020);

*Energy Storage Ass'n v. PJM Interconnection, L.L.C.*, FERC Dockets EL17-64 &

EL17-65, Order Establishing Settlement Procedures and Postponing Technical

Conference, 163 FERC ¶ 61,157 (May 30, 2018); *id.*, Order on Complaint and

Establishing Technical Conference, 162 FERC ¶ 61,296 (Mar. 30, 2018); *id.* P 1

(noting Section 206 complaint filed Apr. 13, 2017).[10]

*Orders Directing Hearing and/or Settlement Judge Procedures.* The

Commission ordered hearing and/or settlement judge procedures for 23 of the 145

staff-identified complaints. This includes all of the proceedings at issue in

Louisiana's mandamus petition.

Of these 23 proceedings, 15 resulted in settlements that were approved by

the Commission. In 10 of these 15 proceedings the settlement was approved by the

Commission less than two years after the filing of the complaint. The fastest

settlement approval occurred less than 10 months from the filing of the complaint.

*See East Texas Elec. Coop v. Pub. Serv. Co. of Okla.*, FERC Docket EL18-199

---

[10] In two consolidated proceedings, the Commission ordered a technical conference after completing a paper hearing. *See, e.g.*, *Am. Elec. Power Serv. Corp. v. Midcontinent Indep. Sys. Operator, Inc.*, FERC Dockets EL17-89 & EL19-60, 172 FERC ¶ 61,163 (Aug. 27, 2020) (ordering technical conference after two separate initial orders set some issues for settlement judge procedures and other issues for a paper hearing).

(consolidated with EL17-76 and ER19-1396) (Letter Order approving settlement June 28, 2019; complaint filed September 6, 2018).  In one of these proceedings, settlement occurred almost five years after the filing of the complaint.  *See Am. Elec. Power Corp. v. Midcontinent Indep. Sys. Operator, Inc.*, FERC Docket EL17-89 (complaint filed Sept. 15, 2017; settlement approved Sept. 7, 2022). However, in that proceeding, the Commission's initial order, which was issued just over two-years after the complaint was a merits ruling on a number of issues (granting some and denying others), and the Commission ordered a technical conference and additional briefing after the first round of settlement judge procedures.  The Commission then ordered additional hearing and settlement judge procedures after ruling on the briefing and technical conference.  *See Am. Elec. Power Serv. Corp. v. Midcontinent Indep. Sys. Operator, Inc.*, FERC Dockets EL17-89 & EL19-60, 172 FERC ¶ 61,163 (Aug. 27, 2020).

In 4 of these 23 proceedings, all involving the Entergy System, there was a partial settlement (the Mississippi Settlement) recently approved by the Commission with the proceedings continuing as to other parties.  *See Sys. Energy Res., Inc.*, FERC Dockets ER18-1182, EL17-41, EL18-142, EL18-204, EL18-152, EL18-1182, EL20-72, ER21-117, ER21-139, EL21-24, ER21-748, EL21-46, EL21-56, ER22-958, Order Approving Uncontested Settlement, 181 FERC ¶ 61,120 (Nov. 17, 2022).

In one proceeding—the Sale-Leaseback Proceeding—the Commission issued a merits order on the initial decision. 181 FERC ¶ 61,243. In 3 of these proceedings—the consolidated Return on Equity Proceeding—the settlement and hearing judge procedures are completed and the initial decision is pending before the Commission.

Finally, in 4 of these 23 proceedings, the hearing judge and/or settlement judge procedures are ongoing. This includes the Grand Gulf Prudence Proceeding (EL21-56). *See infra* pp. 33-35. The remaining three proceedings are:

(1) *La. Pub. Serv. Comm'n v. Entergy Corp.*, FERC Docket EL22-6, which was filed on October 29, 2021. In an order issued on August 9, 2022, the Commission dismissed the complaint in part and established hearing and settlement judge procedures for part of the complaint. *La. Pub. Serv. Comm'n v. Entergy Corp.*, FERC Docket EL22-6, 180 FERC ¶ 61,085 (Aug. 9, 2022). That order partially resolved the complaint, and rehearing of the dismissed portion has not been sought. As a result, the Commission finally resolved part of the case; however, this has not been counted as a final resolution in the statistics above given the remaining issues. The settlement judge procedures are ongoing, with a settlement conference held on December 2, 2022, and another scheduled for February 27, 2023. *See La. Pub. Serv. Comm'n v. Entergy Corp.*, FERC Docket EL22-6, Status Report of the Settlement Judge (Jan. 3, 2023).

(2) *Kansas Elec. Power Coop., Inc. v. Evergy Kansas Central, Inc.*, FERC Docket EL22-20, which was filed on December 10, 2021.  On May 31, 2022, the Commission issued an order establishing hearing and settlement judge procedures. *See Kansas Elec. Power Coop., Inc. v. Evergy Kansas Central, Inc.*, 179 FERC ¶ 61,162 (May 31, 2022).  The parties remain actively engaged in proceedings before the settlement judge with a sixth settlement conference scheduled for February 1, 2023.  *See Kansas Elec. Power Coop., Inc. v. Evergy Kansas Central, Inc.*, FERC Docket EL22-20, Order Canceling and Rescheduling Sixth Settlement Conference (Jan. 9, 2023).

(3) *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL20-72, which was filed on September 21, 2020.  The Commission issued an order establishing hearing and settlement judge procedures on May 13, 2021.  *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 175 FERC ¶ 61,113 (May 13, 2021).  Since that time, there have been more than 300 filings in that docket before the administrative law judge, including a multi-week trial-type hearing that occurred between September 2022 and December 2022.  A post-hearing conference was held on January 30, 2023.

### Timing of the Louisiana Complaints At Issue Here

The foregoing illustrates that the Louisiana proceedings are outliers relative to the general Commission practice, in which the vast majority of Section 206

complaints (80%) are decided on the merits within two years, and more than two-thirds (68.9%) are decided on the merits within two years without any additional procedures. And the processing of these Louisiana complaints has been dictated by their complexity and the parties' own desired proceedings before administrative law judges. The Commission's processing of these proceedings has resulted in a final merits order in the Sale-Leaseback Proceeding, and an order setting the Grand Gulf Prudence Proceeding for a hearing; the Return on Equity Proceeding is before the Commission pending revisions to the Commission's return on equity methodology following remand from the D.C. Circuit.

*Sale-Leaseback Proceeding.* The length of the Sale-Leaseback proceeding is a function of its complexity—the proceeding addressed nine technical issues of regulatory accounting and contractual relationships dating back 20 years. This complexity can be seen in the administrative law judge's issuance of a 212-page initial decision and the Commission's issuance of a 167-page merits order (with one Commissioner dissenting). The timing was also driven by the lengthy proceedings before the administrative law judge, and the additional issues (described below), including the Mississippi Settlement, that were raised to the Commission after issuance of the administrative law judge's initial decision. As explained in the Commission's Response (at 12-15), once the Mississippi Settlement was filed, the Commission focused on determining whether it was "just

and reasonable" within the meaning of the Federal Power Act, and, if so, how to extract Mississippi from all of the pending Section 206 complaint and Section 205 rate proceedings in which it was participating.

A merits order recently issued in the Sale-Leaseback proceeding on December 23, 2022. *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL18-152, Opinion No. 581, 181 FERC ¶ 61,243 (Dec. 23, 2022). System Energy has requested rehearing of that decision. The decision will be subject to judicial review after the agency has acted with finality.

As explained in the Commission's response, the Sale-Leaseback proceeding concerns a contractual relationship dating back to 1988. *See* FERC Response at 9. On May 18, 2018, Louisiana filed a Section 206 complaint alleging that System Energy violated the filed rate doctrine and the Commission's ratemaking and accounting requirements when billing the costs of the Grand Gulf Nuclear Power Station's lease renewals through the formula rate agreement between System Energy and the Entergy companies. *See* Opinion No. 581, P 2. On September 20, 2018, 125 days after the filing of the complaint, the Commission issued an initial order establishing hearing and settlement judge procedures and setting a refund effective date. *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 164 FERC ¶ 61,189 (2018). In compliance with Section 206(b)'s requirement to give an estimate and explanation for the timing of a final decision, the Commission

explained in the initial order that given the complexity of the issues, the hearing

procedure should take twelve months or be completed by September 30, 2019, and

the Commission should be able to issue an order within eight months of briefing on

exceptions or by July 31, 2020.  *Id.* P 31.[11]

A settlement judge was designated on September 28, 2018, and the parties

engaged in settlement discussions which were terminated on November 27, 2018.

*See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, EL18-152, Order of Chief

Judge Terminating Settlement Judge Procedures and Establishing Track III

Procedural Time Standards (Nov. 27, 2018).  The parties agreed upon Track III

designation for the hearing procedure, which the chief administrative law judge

adopted, and under which the hearing would commence on October 2, 2019 and an

initial decision should have issued by March 16, 2020.  *Id.*  Shortly thereafter the

administrative law judge granted an unopposed motion by System Energy that

pushed the hearing back to November 12, 2019 and the initial decision deadline to

---

[11] The Commission explained: "FPA section 206(b) also requires that, if no final
decision is rendered by the conclusion of the 180-day period commencing upon
initiation of a proceeding pursuant to Section 206, the Commission shall state the
reasons why it has failed to do so and shall state its best estimate as to when it
reasonably expects to make such decision.  Based on our review of the record, we
expect that, if this case does not settle, the presiding judge should be able to render
a decision within approximately twelve months of the commencement of hearing
procedures, or September 30, 2019.  Thus, we estimate that, absent settlement, we
would be able to issue our decision within approximately eight months of the filing
of briefs on and opposing exceptions, or by July 31, 2020." *Id.* P 31.

April 6, 2020. *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket

EL18-152, Order of Chief Judge Extending Track III Procedural Time Standards

(Dec. 10, 2018).

Before discovery progressed, on January 18, 2019, Louisiana filed a motion

seeking to establish a list of 12 issues it believed were within the scope of the

proceeding and to compel System Energy to provide certain information and

documents. *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, Order Granting

in Part and Denying in Part Motion to Compel, 166 FERC ¶ 63,013 (Feb. 6, 2019).

At an oral argument on the motion, the parties agreed that the request to establish a

list of issues was premature. *Id.* P 2.

The parties proceeded to file testimony and conduct discovery. However, in

July 2019, a discovery dispute led the retail regulators to seek abeyance of the

procedural schedule. Sale-Leaseback Initial Decision P 79. That dispute was

resolved in August 2019 without adjusting the hearing schedule. *Id.* P 80.

The hearing commenced on November 12, 2019, and finished on November

26, 2019. *Id.* P 82. After the hearing the parties filed briefs and the administrative

law judge conducted an oral argument on March 19, 2020. *Id.* PP 81-82. On April

6, 2020, the administrative law judge issued a 212-page initial decision which

addressed 9 separate issues. *See id.* The administrative law judge found that

System Energy's re-amortization of the principal payments and interest charges in

its renewal of the original sale-leaseback of a portion of the Grand Gulf Nuclear

Plant was unjust and unreasonable, as are principal and interest charges to be paid

under the renewal leases, and that these charges may not be passed on to

ratepayers. *Id.* P 1.

The parties filed briefs on exceptions to the initial decision starting on June

22, 2020. System Energy filed a motion to extend the briefing period to September

22, 2020, which was granted. The last of that briefing was filed on October 22,

2020. Opinion No. 581, P 18.

During the briefing on exceptions, System Energy filed a motion to lodge

and request to take notice of an Internal Revenue Service notice on September 22,

2020. Opinion No. 581, P 21. Responses to that motion were filed in October

2020, and the last reply was filed November 20, 2020. *Id.* PP 21-32. Shortly

thereafter, on December 4, 2020, System Energy filed another motion to lodge an

IRS Revenue Agent Report. *Id.* P 33. Briefing on that motion was completed on

January 28, 2021. *Id.* PP 33-37. Both of these motions were addressed in Opinion

No. 581. *See Id.* PP 21-43.

As noted above, on June 23, 2022, System Energy filed the Mississippi

Settlement in this and other dockets. Briefing on that settlement was completed on

August 16, 2022, and the Commission approved the Mississippi Settlement in an

order on November 17, 2022. *See Sys. Energy Res., Inc.*, Order Approving

Uncontested Settlement, 181 FERC ¶ 61,120 (Nov. 17, 2022).

Viewed from the date of the complaint, the Commission's decision is an

outlier from its typical handling of Section 206 complaint proceedings described

above, as the Commission's merits decision issued 4 years and 7 months after the

complaint was filed. But, as explained above, the Commission issued its initial

order setting the matter for hearing and settlement judge procedures in only 125

days. And the proceeding was in settlement and hearing judge procedures for

almost two years, with the parties dictating the schedule, including their request to

place this case on the longest procedural track for handling hearings. The

Commission's merits order issued 2 years and 2 months after the completion of

briefing on exceptions to the initial decisions, and slightly less than 1 year and 11

months after the completion of briefing on System Energy's motions to lodge.

That period includes time during which the comprehensive Mississippi Settlement

was pending before the Commission. If the time during which the Mississippi

Settlement was pending is subtracted, the period between the completion of

briefing on exceptions (October 22, 2020) and the filing of the Mississippi

Settlement (June 23, 2022) was 1 year and eight months. And the period from the

order on the Mississippi Settlement (November 17, 2022) to Opinion No. 581

(December 23, 2022) was just an additional 36 days.

***Grand Gulf Prudence Proceeding.*** The Commission's initial order on the Grand Gulf Prudence Complaint was issued less than two years after the filing of the complaint. *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL21-56, 181 FERC ¶ 61,135 (Nov. 18, 2022); *id.* P 1 (noting complaint filed March 2, 2021). That order set three issues for settlement judge and hearing procedures, and denied another issue in the complaint. *See id.* PP 177-185. As such, the initial order represents a final merits determination on one of the complaint's four issues, while further procedures are ongoing for the other issues. In addition, the initial order denied System Energy's motion to strike and granted System Energy's motion to dismiss the Entergy Corporation as a party. The timing of the Commission's initial decision was also impacted by the filing of the Mississippi Settlement in this proceeding. The complaint was pending for less than one year and four months when the Mississippi Settlement was filed.

On March 2, 2021, Louisiana filed the Grand Gulf Prudence Complaint alleging that System Energy violated the obligation of prudent utility management in operating Grand Gulf, resulting in large overcharges to Entergy Operating Companies. *Id.* P 2. Louisiana alleged that it was imprudent for System Energy to perform a 178 megawatt "uprate" to Grand Gulf in 2021, or that System Energy imprudently managed the costs for the uprate. *Id.* PP 10-13. Louisiana also alleged that System Energy imprudently managed the Grand Gulf plant from 2016

33

to 2020. *Id.* PP 181-182. And it asked the Commission to modify the agreement
between System Energy and the retail regulators to provide for advance prudence
review for projects over $125 million, and to otherwise revise the agreement.
*Id.* PP 183-183.

On March 5, 2021, System Energy filed a motion to extend the time to file a
response by 50 days, which Louisiana opposed, System Energy responded to that
opposition, and Louisiana, seeking the last word, responded to the response. *Id.*
P 21. The Commission granted a 25-day extension on March 16, 2021. Numerous
parties intervened and on April 16, 2021, System Energy filed a motion to strike
portions of the complaint and a separate motion to dismiss the complaint and
answer. *Id.* PP 22-26. System Energy argued that Louisiana's was improperly
challenging a 2012 improvement to Grand Gulf that Louisiana had not complained
about in the intervening 9 years, and that Louisiana failed to meet its burden to
show "serious doubt" about the prudence of Grand Gulf's operations. *Id.*
PP 58-80.

Louisiana then sought an extension of time to file an answer to System
Energy's motion to dismiss and motion to strike, which the Commission granted.
*Id.* P 26. Briefing on the complaint and System Energy's motions was completed
on July 7, 2021. *Id.* P 30. On September 1, 2021, four former FERC

Commissioners filed comments, and on September 7, 2021, Louisiana filed a response to those comments. *Id.* P 31.

On June 23, 2022, the Mississippi Settlement was filed in this docket. And on November 17, 2022, the Commission approved that settlement.

The next day the Commission issued its order in this proceeding. *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, Order on Complaint and Establishing Hearing and Settlement Judge Procedures, 181 FERC ¶ 61,135 (Nov. 18, 2022). As noted above, the Commission's order on the Grand Gulf Complaint set three issues for settlement and hearing judge procedures and denied one issue on the merits. *Id.* PP 1-3.

System Energy sought rehearing of the Commission's decision on December 16, 2022. Though not permitted by Commission rules, Louisiana filed an answer to the rehearing request on January 3, 2023. On January 17, 2023, the Commission issued a notice of denial of rehearing by operation of law and providing for further consideration. *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 182 FERC ¶ 62,024 (Jan. 17, 2023).

***Return on Equity Proceedings.*** The return on equity proceedings have been lengthy because of the complexity of the return on equity analysis, the considerable time the parties spent engaged in litigation before an administrative law judge (during which time they controlled the proceeding schedule), and the

Commission's recent changes to its return on equity methodology, which remains

under review following remand from the D.C. Circuit.  The Commission gives

important and complex questions like the determination of an appropriate return on

equity methodology careful consideration, before those questions proceed to

judicial review.  *See Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017); *MISO*

*Transmission Owners* 45 F.4th 248 (D.C. Cir. 2022).

Louisiana's first return on equity complaint (EL18-142) was filed on April

27, 2018.  It was set for settlement judge and hearing procedures 119 days later.

*See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL18-142, 164

FERC ¶ 61,134, Order on Complaint, Establishing Hearing and Settlement Judge

Procedures, and Establishing Effective Date (Aug. 24, 2018).  That initial order

also denied in part and dismissed in part portions of the complaint.  The proceeding

was consolidated with a pending return on equity complaint (EL17-41) filed by

Arkansas and Mississippi on January 23, 2017.  The proceedings were pending

before an administrative law judge until an initial decision issued on March 24,

2021.  During that 2 year and 7 month proceeding, the parties sought to modify the

briefing schedule, in part due to the consolidation of Louisiana's later-filed

complaint (EL18-204), and in order to address recent Commission orders regarding

the return on equity methodology.  Indeed, the administrative law judge found that

the consolidation of the later-filed complaint "played a major role" in the delay

between an initial order being issued as previously scheduled on November 5, 2019, and the actual March 24, 2021 issuance.  Return on Equity Initial Decision, P 581; *see id.* PP 579-91.  And that later-filed complaint was set for a hearing 115 days after it was filed.

As explained below, by the time the administrative law judge's initial decision was issued, the Commission was already well into litigation in the D.C. Circuit challenging the return on equity methodology that the administrative law judge applied.

*Return on Equity Methodology*.  The Commission's return on equity methodology has been developed and revised in a series of orders that have twice been the subject of petitions for review in the D.C. Circuit.  A number of proceedings involving primarily return on equity issues have been held before the Commission while these orders were litigated before that Court.

In 2014, the Commission issued Opinion No. 531, which addressed complaints challenging the return on equity of New England transmission owners. *See* Opinion No. 531, 147 FERC ¶ 61,234, *order on paper hearing*, Opinion No. 531-A, 149 FERC ¶ 61,032 (2014), *order on reh'g*, Opinion No. 531-B, 150 FERC ¶ 61,165 (2015), *remanded*, *Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017). In Opinion No. 531, the Commission adopted certain changes to the models it uses to evaluate and set return on equity, in particular replacing a one-step model that

considered only short-term growth projections with a two-step model that considered both short- and long-term growth projections. *See* Opinion No. 531, 147 FERC ¶ 61,234, PP 8, 32-41.  Opinion No. 531 was further refined after a paper hearing and on rehearing. *See* Opinion No. 531-A, 149 FERC ¶ 61,032 (2014), *order on reh'g*, Opinion No. 531-B, 150 FERC ¶ 61,165 (2015).

On April 14, 2017, the D.C. Circuit vacated and remanded Opinion No. 531 and its progeny, finding that the Commission had not adequately shown that the New England transmission owners' return on equity was unjust and unreasonable and further that the Commission had not established that the replacement return on equity it set was just and reasonable. *See Emera Maine*, 854 F.3d at 23-27.  In response to the D.C. Circuit's decision, the Commission directed the parties in the underlying proceeding to propose a framework for determining whether a return on equity is reasonable. *See Coakley v. Bangor Hydro-Elec. Co.*, Briefing Order, 165 FERC ¶ 61,030, PP 1, 15 (Oct. 16, 2018).  In a subsequent order, the Commission proposed to change its approach to determining a reasonable return on equity by giving equal weight to four financial models, instead of relying primarily on a single methodology. *See Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569, 169 FERC ¶ 61,129 (2019), *order on reh'g*, Opinion No. 569-A, 171 FERC ¶ 61,154, *order on reh'g*, Opinion No. 569-

B, 173 FERC ¶ 61,159 (2020); *see generally MISO Transmission Owners*, 45 F.4th at 255-58.

The D.C. Circuit recently vacated (in relevant respect) Opinion No. 569 and its progeny, remanding to the Commission to further explain and refine its return on equity methodology. *MISO Transmission Owners*, 45 F.4th at 265. That review is presently ongoing in the agency proceeding on remand.

*Louisiana's Return on Equity Complaints.* On January 23, 2017, Arkansas filed a Section 206 complaint asking the Commission to "institute a new Section 206 docket to investigate" System Energy's return on equity element of its formula rate for the Grand Gulf nuclear plant. *Ark. Pub. Serv. Comm'n v. Sys. Energy Res. Inc.*, FERC Docket EL17-41, Complaint at 2 (Jan. 23, 2017).[12] On September 29, 2017, the Commission issued an order establishing hearing and settlement judge procedures and setting a refund effective date. *Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL17-41, 160 FERC ¶ 61,141 (Sept. 29, 2017). In that order, the Commission explained that, based upon its review of the record, it expected that, if the proceeding does not settle, the administrative law judge should be able to render a decision within 12 months of

---

[12] As noted above, the Commission lacked a quorum from February 4, 2017 until August 9, 2017, preventing it from acting on numerous matters, including Section 206 complaints.

the commencement of hearing procedures, and the Commission should be able to issue a decision within 10 months of the filing of briefs on exceptions to the administrative law judge's initial decision, meaning a final decision by September 30, 2019. *See id.* P 19.[13]

On April 27, 2018, Louisiana filed a Section 206 complaint challenging System Energy's return on equity, capital structure, and depreciation rates. *See La. Pub. Serv. Comm'n v. Sys. Energy Res. Inc.*, EL18-142, Complaint (Apr. 27, 2018). Louisiana requested that the Commission "set this complaint for hearing." *Id.* at 24. On August 24, 2018, 119-days after the filing of the complaint, the Commission issued an order establishing hearing judge and settlement procedures for the return on equity portion of the complaint, which it consolidated with the Arkansas complaint. *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL18-142, 164 FERC ¶ 61,134, Order on Complaint, Establishing Hearing

---

[13] The Commission specifically referenced the requirement in Section 206(b) to state the reason and give an estimate if it does not issue a final order within 180-days of the initiation of a proceeding. *See id.* ("Section 206(b) also requires that, if no final decision is rendered by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to section 206, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision. Based on our review of the record, we expect that, if this case does not settle, the presiding judge should be able to render a decision within approximately twelve months of the commencement of hearing procedures, or September 30, 2018. Thus, we estimate that, absent settlement, we would be able to issue our decision within approximately ten months of the filing of briefs on and opposing exceptions, or by September 30, 2019.")

and Settlement Judge Procedures, and Establishing Effective Date (Aug. 24, 2018).

The Commission also denied the capital structure claim in the complaint and

dismissed the depreciation rate claim.  The Commission thus issued a final merits

order on 2 of the 3 issues raised in the complaint 119 days after the complaint was

filed.  On the third issue—the return on equity—the Commission set it for a

hearing, as Louisiana requested in the complaint.  In this order, as in the Arkansas

proceeding, the Commission provided an estimate for when it expected to issue a

final merits decision.  *See id.* P 30.[14]

On August 28, 2018, Louisiana filed a motion asking the administrative law

judge to consolidate its return on equity complaint (EL18-142) with the pending

Arkansas complaint (EL17-41), requesting that settlement judge procedures be

waived, and requesting to establish a complex Track III schedule.  The chief

administrative law judge granted that relief the next day.  *See Ark. Pub. Serv.*

*Comm'n v. Sys Energy Res., Inc.*, FERC Dockets EL17-41 & EL18-142, Order of

---

[14] The Commission stated: "Section 206(b) also requires that, if no final decision is
rendered by the conclusion of the 180-day period commencing upon initiation of a
proceeding pursuant to section 206, the Commission shall state the reasons why it
has failed to do so and shall state its best estimate as to when it reasonably expects
to make such decision.  Based on our review of the record, we expect that, if this
case does not settle, the presiding judge should be able to render a decision within
twelve months of the commencement of hearing procedures, or August 31,
2019.  Thus, we estimate that, absent settlement, we would be able to issue our
decision within approximately eight months of the filing of briefs on and opposing
exceptions, or by June 30, 2020."  *Id.* P 30.

Chief Judge Consolidating Proceedings, Terminating Settlement Judge Procedures, Establishing Track III Procedural Time Standards, and Scheduling Prehearing Conference (Aug. 29, 2018).[15]

On September 24, 2018, System Energy and Louisiana both requested rehearing of the Commission's initial order.  On June 20, 2019, the Commission dismissed both rehearing requests.  *La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, 167 FERC ¶ 61,240 (June 20, 2019).  As to Louisiana's rehearing request, the Commission explained that Louisiana "'concede[d]'" that it "failed to provide evidence" necessary for its rehearing claims and "admit[ted] that the Commission did not err in the August 2018 Order."  *Id.* P 22; *see also* Request of the La. Pub. Serv. Comm'n for Reconsideration or Rehearing in Light of the Amended Complaint at 3, FERC Docket EL18-142 (Sept. 24, 2018) ("The LPSC concedes that the LPSC did not apply the three-part test or provide allegations and evidence showing that the test is inapplicable in the complaint.").

During the pendency of System Energy's substantive rehearing request and Louisiana's facially deficient rehearing request, the administrative law judge

---

[15] Parties had engaged in multiple settlement conferences between September 29, 2017 and July 26, 2018, which resulted in settlement of all of the issues in two related dockets (including a Commission initiated Section 206 investigation), but not the return on equity complaint. *See Sys. Energy Res., Inc.*, FERC Docket ER17-2219, Letter Order Approving Entergy Services Settlement (Aug. 24, 2018).

proceedings continued.  On September 7, 2018, the chief administrative law judge

established a Track III procedural schedule for the consolidated return on equity

proceeding, which contemplated a hearing in June 2019, and an initial decision in

November 2019.[16]  *See Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC

Docket EL17-41 & EL18-142, Order on Procedural Schedule and Rules of

Conduct for the Hearing (Sept. 7, 2018).

On October 17, 2018, the administrative law judge stayed the procedural

schedule at the request of Arkansas and Mississippi.  *Ark. Pub. Serv. Comm'n v.

Sys. Energy Res., Inc.*, FERC Docket EL17-41 & EL18-142, Order of the Chief

Judge Holding Procedural Schedule in Abeyance (Oct. 17, 2018).  Arkansas and

Mississippi made that request to "allow the parties time to consider the

implications of the Commission's" order in the *Emera Maine* remand proceeding.

On November 15, 2018, the Commission issued an order providing guidance to

administrative law judges on how to address the revised return on equity

methodology.  *Order Providing Guidance*, 165 FERC ¶ 61,119 (Nov. 15, 2018).

Following that order, on November 20, 2018, the chief administrative law judge

lifted the abeyance.  On November 27, 2018, the chief administrative law judge

---

[16] Those dates would be pushed back by extension requests and other filings by the
parties, and the eventual hearing was not held until September 2020, and the initial
decision was not issued until March 24, 2021.

granted a motion by Arkansas seeking to alter the hearing schedule, with the

hearing now set to begin in September 2019 and an initial decision to issue by

February 18, 2020. *See Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC

Docket EL17-41 & EL18-142, Order of Chief Judge Adopting Procedural

Schedule (Nov. 27, 2018). Direct and answering testimony were submitted in

early 2019 in accordance with that schedule.

In the meantime, on September 24, 2018, Louisiana filed a new Section 206

complaint challenging System Energy's capital structure; Louisiana stated it

intended the complaint to be an "amendment" to its pending return on equity

complaint. *See La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket

EL18-204, 166 FERC ¶ 61,022 (Jan. 17, 2019). The Commission set the

complaint for a hearing in an initial order on January 17, 2019, 115 days after the

filing of the complaint. *See id.* In that order, noting its compliance with Section

206(b), the Commission estimated that the initial decision would issue January 31,

2020, and the Commission's merits order would issue by November 30, 2020. *Id.*

P 31. Between January 25, 2019 and June 20, 2019, the parties engaged in

settlement discussions related to EL18-204, and upon reporting to the settlement

judge that they had reached an impasse, the settlement judge procedures were

terminated, and the matter was set for a hearing and consolidated with the two

return on equity complaints (EL17-41 and EL18-142). (Recall that Louisiana filed the EL18-204 complaint as a purported "amendment" to its EL18-142 complaint.)

After consolidation, the administrative law judge conducted a scheduling hearing with the parties that resulted in a January 2020 hearing start and an initial decision date of June 19, 2020. *See Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL17-41, EL18-142, EL18-204, Order on Revised Procedural Schedule (July 15, 2019). In December 2019, the parties sought to push back the hearing schedule by four months in order to address the impact of Opinion No. 569. *See Ark. Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL17-41 & EL18-142, Order Extending Procedural Time Standards (Dec. 13, 2019); Return on Equity Initial Decision, 174 FERC ¶ 63,024, P 42. The new schedule would have a hearing in June 2020 with an initial decision by October 28, 2020, but that was, once again, pushed back at the request of the parties (this time System Energy), resulting in a hearing date in August 2020 and an initial decision by December 21, 2020.

On March 13, 2020, the Commission closed the FERC headquarters building in light of the Covid-19 pandemic. As a result, the chief judge designated a settlement judge and encouraged the parties to engage in renewed settlement discussions because "settlement in this matter could avoid administrative difficulties associated with the upcoming hearing" which was set to occur while

the FERC building is closed.  *See Ark. Pub. Serv. Comm'n v. Sys. Energy Res.,*

*Inc.*, FERC Docket EL17-41 & EL18-142, Order of Chief Judge Designating

Settlement Judge (Mar. 18, 2020).  The parties continued to submit testimony and

prepare for a hearing and, in June 2020, sought another extension of the hearing

schedule so they could "file testimony addressing Opinion No. 569-A."  *See Ark.*

*Pub. Serv. Comm'n v. Sys. Energy Res., Inc.*, FERC Docket EL17-41 & EL18-142,

Order Amending Procedural Schedule (June 9, 2020); Return on Equity Initial

Decision, 174 FERC ¶ 63,024, P 49.

A hearing finally commenced on September 29, 2020 and concluded on

October 7, 2020.  Return on Equity Initial Decision, 174 FERC ¶ 63,024, PP 58-

59.  After Louisiana sought a one-week extension to the deadlines, the parties

submitted briefs and reply briefs in November and December 2020.  Return on

Equity Initial Decision, 174 FERC ¶ 63,024, PP 1, 57-63.

The administrative law judge issued the 155-page initial decision on March

24, 2021, which granted relief on Arkansas and Mississippi's return on equity

complaint (EL17-41), dismissed Louisiana's return on equity complaint (EL18-

142), and granted relief on Louisiana's second complaint challenging System

Energy's capital structure (EL18-204).[17]  In ruling on the return on equity

---

[17] As noted in the initial decision, the refund period for all claims in the return on
equity proceeding ended while the parties were still seeking extensions and filing
testimony before the administrative law judge.  *See* Return on Equity Initial

complaints, the administrative law judge applied the Commission's methodology

announced in Opinion Nos. 569, 569-A and 569-B.  *Id.* PP 72-99.  System Energy,

Louisiana (and the other retail regulators), and Commission trial staff filed briefs

on exceptions to the initial decision along with responses and replies.  That

briefing was completed in May 2021.

Since that time, two important developments have occurred.  First, the

Commission's return on equity methodology was pending before the D.C. Circuit

in the *MISO Transmission Owners* proceeding (*see supra* pp. 38-39).  Specifically,

the Commission filed the certified index to the administrative record in that

proceeding on December 3, 2020, which included Opinion Nos. 569, 569-A, and

569-B.  As a result of the filing of the record, jurisdiction to review or amend those

opinions rested exclusively in the D.C. Circuit.  *See* 16 U.S.C. § 825*l*(b) ("Upon

the filing of such petition such court shall have jurisdiction, which upon the filing

of the record with it shall be exclusive, to affirm, modify, or set aside such order in

whole or in part.").  Under the schedule set by the D.C. Circuit on February 2,

2021, the briefing in that proceeding was completed on August 19, 2021.  Oral

---

Decision, 174 FERC ¶ 63,024, PP 611, 613 (awarding refunds for periods of
January 23, 2017 through April 22, 2018, and September 24, 2018 through
December 23, 2019).  At no point during these proceedings did Louisiana seek to
speed up their resolution in order to ensure completion during the refund period.

argument was held on November 18, 2021 and the Court issued its opinion on August 9, 2022, vacating and remanding Order Nos. 569, 569-A, and 569-B.

The Commission's return on equity approach was under consideration by the D.C. Circuit before the ALJ's initial decision here even issued; indeed, the brief of the intervenor supporting the petitioners was filed in the D.C. Circuit the same day the initial decision issued. Knowing that any decision by the D.C. Circuit would directly impact the Commission's review of the return on equity complaints here, it was reasonable and appropriate for the Commission to wait until the D.C. Circuit ruled before acting on the ALJ's initial decision. To be sure, had the D.C. Circuit denied the petitions for review, the Commission's task would have been easier—ensuring that the initial order complied with the methodology laid out in Order Nos. 569, 569-A, and 569-B. But the D.C. Circuit's vacatur of those orders requires the Commission to reevaluate its return on equity methodology.

The Commission is currently reconsidering its approach to return on equity determinations on remand in the MISO Transmission Owners proceeding. Any adjustment to the Commission's methodology will directly impact the ultimate resolution of the return on equity complaints, as the administrative law judge's initial decision relied on the now vacated methodology. *See* Return on Equity Initial Decision, 174 FERC ¶ 63,024, PP 72-99, 325-450.

In addition, as explained in the Commission's response, on June 23, 2022, System Energy filed a partial settlement with the Mississippi Commission (the Mississippi Settlement) that would resolve Mississippi's claims in these proceedings and a number of other dockets (13 in total). After briefing on the impact of that settlement on these various dockets, the Commission approved the Mississippi Settlement on November 17, 2022. *See Sys. Energy Res., Inc.*, Order Approving Uncontested Settlement, 181 FERC ¶ 61,120 (Nov. 17, 2022).

* * *

As explained above, the Commission is attentive to every Federal Power Act Section 206 complaint it receives. The timing for issuance of a merits order is driven principally by the complexity of the complaint proceeding and whether additional record-development (and perhaps settlement) procedures are appropriate. In the vast majority (80%) of the Section 206 complaints filed within the past six years, the Commission has issued a final merits order within two years of filing. In more than half of the proceedings (58.6%) the Commission issued a merits order within one year of the complaint being filed.

As for the Louisiana complaints that are the subject of its mandamus petition, the above analysis demonstrates that they are outliers, both as to historical and substantive complexity of the issues they raise, and (understandably in light of that complexity) as to the timing of agency action. The Commission already has

reached a merits resolution in one of those complaint proceedings (Sale-Leaseback Proceeding), and is well on its way in another (Grand Gulf Prudence Proceeding, now in hearing before a FERC administrative law judge).  The remaining Return on Equity Proceeding is subject to the Commission's ongoing reevaluation of its return on equity methodology, currently on remand from the D.C. Circuit.  There is no need for further mandamus relief in those cases; the Commission already has demonstrated its commitment to timely action in those cases.  But if the Court remains unsure, the Commission can provide periodic status reports, providing the parties and the Court further opportunity to assess the agency's ongoing commitment to expeditious resolution of remaining complaint proceedings.

Respectfully submitted,

Matthew R. Christiansen
General Counsel

Robert H. Solomon
Solicitor

s/ *Matthew J. Glover*
Matthew J. Glover
Attorney

Federal Energy Regulatory
  Commission
Washington, DC  20426
Tel.: (202) 502-6180
Email:  matthew.glover@ferc.gov

February 8, 2023

**APPENDIX**

**Statistical Summary**

- 145 initial orders issued in Federal Power Act Section 206 complaint proceedings initiated since Jan. 23, 2017
- Final Merits Orders in 136 of 145 proceedings (93.8%)
  - 85 issued within 1 year (58.6%)
  - 116 issued within 2 years (80%)
- 108 of 145 initial orders were final merits orders (74.5%)
  - 53 of which issued within 180 days (36.5%)
  - 83 of which issued within 1 year (57.2%)
  - 100 of which issued within 2 years (68.9%)
- 37 required further process (25.5%)
  - 12 required paper hearings
    - 8 resulted in final merits orders
      - 4 of which issued within 2 years
      - 4 of which issued between 2-3 years
    - 2 required further hearing/settlement procedures (and are included in the 23 figure below, but only counted once in the 37 figure above)
    - 2 are pending
  - 4 required technical conference
    - All convened within 2 years
    - 2 were concluded via merits order within 2 years
    - 2 were concluded with acceptance of contested settlement between 2-3 years
  - 23 required hearing/settlement procedures
    - 15 approved settlements
      - 10 approved within 2 years
    - 1 issued merits order on initial decision (Sale-Leaseback)
    - 3 initial decisions but orders still pending
    - 4 hearing/settlement procedures ongoing
      - Includes partial settlement (Mississippi Settlement)
- 22 cases pending - no initial orders issued yet
  - 13 filed within the past 180 days

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Fifth Circuit by using the

appellate CM/ECF system on February 8, 2023.  Participants in the case will be

served by email through the Court's CM/ECF system.


*/s/ Matthew J. Glover*
Matthew J. Glover
Attorney


Federal Energy Regulatory
  Commission
888 First Street, NE
Washington, DC 20426
Telephone: (202) 502-6180
Email: matthew.glover@ferc.gov

February 8, 2023